JUSTICE WEBER
delivered the Opinion of the Court.
Petitioner Paul G. Matt, III, appeals from the final decision of the State Bar of Montana Committee on Character and Fitness refusing to certify petitioner to this Court for admission to the State Bar of Montana. We affirm the decision of the Committee.
We restate the issues for our review as follows:
1. What is the proper standard of review for the Court to apply to a decision of the Committee on Character and Fitness?
2. Did the Committee on Character and Fitness conclude that Mr. Matt is unfit to practice law in the State of Montana?
3. Did the Committee on Character and Fitness violate petitioner’s constitutional right to due process?
On February 28, 1990, Paul G. Matt, III (Mr. Matt), filed his application for certification for admission to the State Bar of Montana. As the rules require, the application was referred for review to the State Bar’s Committee on Character and Fitness (Committee). The Committee investigated and held three hearings. The first hearing, on June 27, 1990, was informal. Based on that hearing the Committee denied Mr. Matt’s certification. Subsequently, a formal reconsideration hearing was held before the Committee on October 11,1990. After the hearing, the Committee notified Mr. Matt by letter *347 that they were still in the process of deliberating regarding Mr. Matt’s Application for Admission and that pursuant to Rule 4(g) of the Committee’s Rules of Procedure, it was considering items discussed in the formal hearing as well as additional items not discussed at the formal hearing but previously submitted in the record. Rule 4(g) provides that the Committee is not bound by the formal rules of evidence.
The Committee gave Mr. Matt the option of producing evidence regarding these additional factors in one of four ways: (a) a formal hearing held at the State Bar of Montana (State Bar) office; (b) a formal hearing held via conference call; (c) written argument; or (d) letting the record stand as stated in the transcript of the informal hearing. Mr. Matt, through his counsel of record, opted for a continuation of the formal hearing held at the State Bar office. A continuation of the formal hearing was held on February 13, 1991. On May 23, 1991, the Committee issued its Findings of Fact and Conclusions of Law denying certification of Mr. Matt to the Clerk of the Supreme Court for admission to the State Bar. Mr. Matt has petitioned this Court for review of the Committee’s denial of his certification.
I
What is the proper standard of review for the Court to apply to a decision of the Committee on Character and Fitness?
This Court issued new rules regarding admission to the State Bar, effective January 17,1991. Rules for Admission to the Bar ofthe State of Montana (1991), 247 Mont. 1. Those new rules provide the following standards for the Committee to follow.
Section IV:
3. Standard of Character and Fitness. Every applicant for the Montana Bar Examination must be of good moral character. It shall be the responsibility of the applicant to demonstrate to the satisfaction of the Committee that the applicant would, if admitted to practice law in Montana, be able to act in accordance with the standards set forth in the Montana Rules of Professional Conduct, fairly, honestly, reasonably, and with unquestionable integrity in all matters in which he or she acts as an attorney at law.
4. Investigation of Applicants. The Committee shall process the applicant’s Application and Questionnaire and, where necessary, *348 otherwise investigate and make a determination of the character and fitness of each applicant to take the bar examination ....
7. Committee Hearings, Rules of Procedure & Appeals. Any problems that arise in the processing of an applicant’s Application and Questionnaire may be discussed in informal communications between the Committee and the applicant. From time to time, substantial issues will arise which will require formal trial and hearing before the Committee which may result in the Committee’s disapproving the applicant’s application and finding a lack of appropriate character and fitness to take the bar examination or be admitted to practice in Montana .... The Rules of Procedure provide for a hearing process before the Committee and also provide for a manner of appeal to the Montana Supreme Court by an applicant who contests the final rulings of the Committee.
We also recently set forth the applicable standard of review for this Court to apply to a decision of the Committee on Character and Fitness in In the Matter of Kenneth J. Pedersen (1991), [250 Mont. 325,] 820 P.2d 1288, 48 St.Rep. 988. In that regard, we stated:
The Montana Constitution provides that this Court has the power and obligation to regulate the admission of attorneys to the Montana Bar. Mont. Const, art. VII, § 2, cl. 3. The Committee on Character and Fitness assists this Court in fulfilling its obligation to regulate the admission of attorneys in Montana. However, the ultimate decision regarding the admission of attorneys in Montana rests exclusively with this Court. Upon reviewing a final decision of the Character and Fitness Committee we will conduct an independent review of the entire record to determine if the Committee erred. When the facts are admitted and uncontested, as they are in this case, we will give due consideration to the inferences drawn by the Committee, including inferences concerning rehabilitation and mitigation. Consideration will be given to the recommendation of the Committee as to whether the applicant is of the requisite good moral character and fitness to be admitted to the Montana Bar. The Committee will have heard testimonial evidence and will have had the opportunity to observe the demeanor and judge the credibility of the applicant or other witnesses. However, inasmuch as we are designated by the Montana Constitution to ultimately make this decision, we will affirm the Committee’s recommendation if we determine it was correct, and we will reverse if we determine the Committee erred. Our review will be in accordance *349 with the existing standards for admission, taking into consideration the whole record. (Emphasis added).
Pedersen, [250 Mont. 325,] 820 P.2d at 1290.
II
Did the Committee on Character and Fitness conclude that Mr. Matt is unfit to practice law in the State of Montana?
The Committee Rules of Procedure, adopted in 1987, specifically placed the on the applicant to prove that he possessed “good moral character”. In contrast, in 1988, this Court adopted Rules for Admission to the Bar (1988), 234 Mont. 1, 9, which provided that “good moral character shall be presumed by the Committee on Character and Fitness”. The current 1991 Rules for Admission to the Bar adopted by this Court are consistent with the original 1987 Committee Rules in providing that the of proof is on the applicant to establish good moral character. See Pedersen, 820 P.2d at 1292.
In the initial hearing the Committee placed the of proof on Mr. Matt to establish his good moral character. To that extent the Committee erred because the first two hearings were governed by the 1988 Rules for Admission to the Bar in which good moral character was to be presumed by the Committee. By the time of the third hearing, the rules had changed, and the could be placed on Mr. Matt.
We note that in Pedersen the of proof was also improperly placed on the applicant. This Comb concluded that because the Committee specifically found that past conduct of the applicant would cause a reasonable person to believe he would be unable or unwilling to act in accordance with the standards set forth in the Montana Rules of Professional Conduct, the Committee’s decision to deny the applicant’s admission was justified. There is one significant difference between this case and Pedersen. In Pedersen, the facts were uncontested. In this case, there is a significant amount of conflict in the interpretation of Mr. Matt’s testimony regarding his past actions. For that reason, we will discuss the conflicting testimony in detail.
In our review of the testimony and evidence, we will begin with the understanding that the good moral character of Mr. Matt is presumed. Mr. Matt maintains that he has established his good moral character and fitness to practice law in the State of Montana. He submitted with his application several letters from judges, attorneys and clients, attesting to his good moral character and fitness to practice law. He also submitted certifications from the bars of *350 Colorado and Nebraska stating that he was a member in good standing at both Bars.
The Committee maintains that Mr. Matt failed to meet his of proof. It contends that it reviewed extensive regular investigation materials, post regular investigation materials, and conducted three hearings with Mr. Matt present, and unanimously concluded that Mr. Matt was untruthful in his testimony before the Committee, and thus, failed to prove his good character.
A significant portion of the questioning of and testimony by Mr. Matt concerned an incident which occurred ten years ago in the State of Nebraska while Mr. Matt was a member of the Nebraska State Bar. The Committee made extensive findings of fact, of which the following are pertinent.
1. In June 1981, Mr. Matt was charged by the Counsel of Discipline of the Nebraska State Bar Association with Misconduct as a lawyer. The charges stemmed from Mr. Matt being charged in 1980 by the Lancaster County Attorney (Nebraska) for conspiracy to possess cocaine.
2. Matt completed a pre-trial diversion program and the criminal charges against him were dismissed.
3. The Committee on Inquiry of the First Judicial District of the State of Nebraska prepared formal charges against Mr. Matt. Upon review of the charges, the Disciplinary Review Board recommended that the Supreme Court of Nebraska issue a reprimand to Mr. Matt.
4. The Nebraska Supreme Court declined to accept the recommendation and upon de novo review, suspended Mr. Matt from the practice of law for one year. The Supreme Court’s decision is reported in State, ex rel. v. Paul G. Matt, III, 213 Neb. 123, 327 N.W.2d 622 (1982).
5. Mr. Matt subsequently applied for and obtained reinstatement to the Nebraska State Bar in January 1984. In addition, he applied for and was admitted to the Colorado State Bar.
11. Mr. Matt has lead this Committee to believe his involvement in this matter was minimal. The Nebraska Supreme Court opinion demonstrates that Mr. Matt’s role in this incident was much more involved, to the point of determining the amounts of cocaine that would be sold and arranging the sale. The Committee finds that by *351 downplaying this incident, Mr. Matt was not candid with the Committee regarding his involvement in the alleged conspiracy.
12. Mr. Matt testified at the June 27,1990, hearing that he did not get anything out of the transaction with Gierlich, that he was not using drugs and he hadn’t ever used drugs.
13. The Nebraska Supreme Court in its opinion states “the record reflects that prior to the events on March 1980, the Respondent had occasionally used marijuana personally and had purchased marijuana more than once from Gierlich who was a close personal friend.” State v. Matt, 213 Neb. 123, 327 N.W. 2d 622, 623, (1982).
14. Mr. Matt was untruthful in the application process before this Committee. His misrepresentations are material to the issues before the Committee and lead the Committee to doubt his candor in other areas as well. (Emphasis supplied.)
On his application, Mr. Matt gave the following explanation for the charges that were filed against him in Nebraska.
This inquiry by the Nebraska State Bar Association resulted from charges being filed against me by the Lancaster County Attorney’s Office in March of 1980 for conspiracy to possess cocaine. These charges were dismissed at the State’s cost in May 1981 when it was accepted that I was not a part of the conspiracy. The charges were filed because of two telephone conversations I had with a close friend of mine in early March of 1980.1 had not seen this friend for three or four months. She asked me if I knew where she might obtain some cocaine, and I told her I did not. She made further inquiries and asked if I knew anyone in Omaha. I told her that possibly the fellow living with my girlfriend in Omaha might know of someone. The telephone conversation was intercepted by law enforcement officers since my friend’s live-in boyfriend was under surveillance. She was followed and ultimately arrested after the authorities charged that she purchased cocaine from the fellow in Omaha. (Emphasis supplied.)
At the first hearing before the Committee, Mr. Matt testified regarding the cocaine dealings as follows:
A. [T]he essence of the charges by the State Bar, or the inquiry by the State Bar was because of charges filed against me by the Lancaster County Attorney’s office, as I set forth. That was based on a close friend of mine who I hadn’t seen for four, five, six months calling me and asking me if she could find some drugs, and I *352 said no. She wanted to know where she could find some cocaine, and I said no.
She then asked me, “What about Omaha?" I was living in Lincoln, and I had a girlfriend in Omaha who lived with a fellow that she also knew named Curt.... I knew he knew a lot of people; he was the head maitre d’ of a restaurant. My girlfriend lived in the same house with him; and I said, “Well, why don’t you try Curt.“ So when I talked to my girlfriend, I asked Curt if he could help Judy, and he said, Probably. So I had Judy call him.
... She later was arrested, and because she had called me, they had charged me; and I went through a year of investigation and procedure with the Lancaster County Attorney’s office until they realized that I was not part of anything. I was not getting anything out of it, I wasn’t using drugs, I hadn’t ever used drugs, I wasn’t involved in getting anything out of Judy’s situation, and it was just a bad mistake on my part, obviously, to even comply with her request after I said no in the first place.
Q. What did you have to do in the pretrial diversion?
A. I had to do, I think 100 hours of community work, I had to read a couple books and make a report, and I had to talk to a member of the probation office, I think every month.
So after this was cleared up, then the Bar Association could look into it, and at that point, they did. The Council on Discipline sent me a letter; they then had a full hearing in which there was seven members who had all the records of the Lancaster County Attorney and all the records of all the investigations.... They decided, after that, that due to all those circumstances and all the evidence they had, a reprimand was the appropriate discipline in my situation.
That was then sent to the Attorney General, who complied with it... I then went to the Supreme Court for approval. The Supreme Court, without looking at any new evidence, just looking at exactly what took place as far as the transcript of my testimony and the evidence there, decided that that wasn’t appropriate and that I should be suspended for a year, and they then did that.
(Emphasis added).
At the second hearing, Mr. Matt testified he himself made the phone call to “Curt” and then called Judy back the next day.
*353 Q. And then it’s my understanding of your testimony in the last hearing that you told her about this guy named Curt who was living with your girlfriend.
A. I told her no, and then she asked me, “What about Omaha?”...
Q. Then did you call Curt and ask if he could help Judy?
A. Judy called me on a Friday. I said that I’d check with Curt if I saw Shirley. Then Saturday morning, I saw Judy’s note and thought, “Oh, that’s right, I said I’d check with Curt,” and then I called Curt. So it was the next morning.
Q. So the transaction actually involved a couple phone calls.
A. One phone call there, and then I called Judy back. (Emphasis added).
As pointed out by the Committee, the Nebraska Supreme Court pinion detailed Mr. Matt’s involvement in the cocaine transaction, he opinion stated:
The formal charges allege that on or about March 7, 1980, the respondent received a telephone call at his law office from a personal friend, Judy Gierlich. Gierlich asked the respondent where she could obtain some cocaine. The respondent first told her that he did not know, but on further questioning agreed to contact a friend of his in Omaha, Nebraska, concerning the availability of cocaine and then recontact her.
On or about March 8, 1980, respondent called Gierlich at approximately 10:15 a.m. and told her that he had talked to the friend in Omaha and had been told that anything was available. At approximately 10:28 a.m. on the same day respondent received a telephone call from Gierlich. Respondent asked Gierlich what quantity of cocaine she intended to purchase. Respondent then gave the telephone number of the person in Omaha to Gierlich and advised her that he would also call again “to make sure there’s no problem."
The record reflects that prior to the events in March 1980 the respondent had occasionally used marijuana personally and had purchased marijuana more than once from Gierlich, who was a close personal friend. His conduct here was motivated by his friendship with Gierlich and he receive no remuneration for his efforts.
*354 The Disciplinary Review Board recommended that the court issue a reprimand ....
The recommendation was not accepted by this court and the matter was referred to a referee. The referee considered the matter solely upon the record a the hearing before the Committee on Inquiry.... [T]he referee ... recommended that respondent be suspended from the practice of law for a period of 1 year, and that readmission be denied unless respondent made a satisfactory showing of rehabilitation from usage of controlled substances.
The referee specifically found that as a result of respondent’s efforts Judy Gierlich was able to illegally purchase a controlled substance and respondent’s personal acquaintance in Omaha was able to sell a controlled substance, and respondent knew, or had reason to know, that such would be the result of his efforts. (Emphasis supplied.)
State v. Matt (Neb. 1982), 327 N.W.2d 622.
Without contradiction, the record establishes that the Committee was correct in finding that Mr. Matt was untruthful in stating that he hadn’t ever used drugs. The record clearly supports the finding that Mr. Matt attempted to lead the Committee to believe his involvement in the drug transaction was minimal, and that Mr. Matt was not candid with the Committee. The dissents focus on the number of phone calls made by Mr. Matt as being irrelevant. We have not emphasized the number of phone calls as being significant. The key aspect is that Mr. Matt consistently attempted to minimize his involvement in the drug transaction and in the use of drugs. We point to one additional factor. The Committee had the opportunity to examine and observe Mr. Matt during the course of three separate hearings and had the corresponding opportunity to observe his demeanor and to judge his credibility. While we are required to make an original review of the record, we may consider the opportunity on the part of the Committee to evaluate the demeanor and to judge the candor of Mr. Matt. We do not have that opportunity. Our review of the record causes us to adopt the same findings as are above set forth on the part of the Committee.
As a result of its findings, the Committee reached the following conclusion:
*355 5. Mr. Matt has made false statements including omission to the Committee. He has failed to exhibit candor in the admissions procedure.
We affirm and adopt that conclusion.
In its conclusions the Committee stated that Mr. Matt had failed to carry his of proving that he possessed good moral character. As previously pointed out, this was improperly placed upon Mr. Matt with regard to the first two hearings. After our review of the record, we do not find that Mr. Matt was adversely affected in any way by the initial placement of the burden of proof upon him. Mr. Matt was competently represented by counsel who vigorously presented witnesses and arguments in his behalf, both before the Commission and before this Corut. We conclude that Mr. Matt had an adequate opportunity to present all information in his behalf and presented the same in considerable detail. We therefore affirm the conclusion by the Committee that Mr. Matt’s conduct was not mitigated by any of the factors or circumstances which are contained in the record. After Mr. Matt’s testimony in the course of the three separate hearings, the Committee concluded that it did not believe he could act fairly, discreetly, honestly, reasonably and with unquestionable integrity in all matters in which he would act as an attorney at law as required by Rule 3(a) of the Rules of Procedure of the Committee on Character and Fitness.
Notwithstanding the findings on the part of the Committee with regard to untruthfulness and lack of candor, Mr. Matt argues that the denial of his admission to practice is a double jeopardy penalty for a “mistake” he made ten years ago. We point out that the application signed by Mr. Matt stated:
5. I understand that if I have furnished significantly false or incomplete information, my application may be summarily rejected. ... (emphasis added).
We conclude the record clearly establishes Mr. Matt’s knowledge that he was required to furnish complete information, and that he failed to furnish such complete information. Mr. Matt is not being penalized for his “mistake” of ten years ago. He is being penalized for his present failure to give truthful and complete information to the Commission.
The dissents raise as an issue the Committee’s conclusion that Mr. Matt violated Rule 8.2 of the Montana Rules of Professional Conduct, when in response to the Committee’s request that he speculate as to the reasons the Nebraska Supreme Court imposed the penalty, he *356 suggested that it was the ill feelings towards Mr. Matt on the part of Chief Justice Krivosha which afforded a reason. At subsequent hearings Mr. Matt continued his attack on Chief Justice Krivosha. In view of the request by the Committee that Mr. Matt speculate as to the reasons for the conduct of the Nebraska court, we have concluded that we will not rule upon the issue regarding Justice Krivosha. We have concluded that we will disregard the Krivosha issue, and determine whether or not the record is otherwise sufficient to affirm the conclusion of the Committee.
In accordance with the standards set forth in Pedersen, we have reviewed the entire record and we have concluded that without regard to the Krivosha issue, the record supports the unanimous decision of the Committee. We hold that Mr. Matt is unfit to practice law in the State of Montana.
Ill
Did the Committee on Character and Fitness violate petitioner’s constitutional right to due process?
Mr. Matt maintains that he was denied his basic right to due process in violation of the Fourteenth Amendment to the United States Constitution and Art. II, Section 17 of the Montana Constitution. In support of this contention, he maintains that the scope of review at each of the three hearings was much more broad than he had reasonably expected from the notice he received prior to each hearing. The Committee maintains that Mr. Matt was afforded proper due process under Rule 4(g) of the Rules of Procedure of the Committee on Character and Fitness (1987).
This issue was most recently addressed by this Court in Pedersen, 820 P.2d at 1291. In that case, this Court discussed the right to practice one’s chosen profession.
Prior to the 1972 Constitution, it was already recognized that the power to regulate the admission of attorneys in Montana was a matter peculiarly within the inherent power of this Court. Goetz, v. Harrison (1969), 153 Mont. 403, 404, 457 P.2d 911, 912.
However, this power is subject to limits imposed by the Federal Constitution. As the United States Supreme Court has said: “A State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment.”
*357 Schware v. Board of Bar Examiners (1957), 353 U.S. 232, 238-39, 77 S.Ct. 752, 756, 1 L.Ed.2d 796, 801. Those bodies charged with investigating and making decisions upon an applicant’s character and fitness to practice law in a particular jurisdiction must afford the applicant adequate due process of law.... The Court added that the right to engage in the practice of law is not and should not be a matter of grace and favor. Willner v. Committee on Character and Fitness (1963), 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224. In a concurring opinion in Willner, Mr. Justice Goldberg discussed the due process requirement in these cases:
“The constitutional requirements in this context may be simply stated: in all cases in which admission to the bar is to be denied on the basis of character, the applicant, at some stage of the proceedings prior to such denial, must be adequately informed of the nature of the evidence against him and be afforded an opportunity to rebut this evidence.”
Willner, 373 U.S. at 107.
Rule 4(g) of the Rules of Procedure of the Committee on Character and Fitness of the State Bar of Montana provides:
(g) The Committee shall not be bound by the formal rules of evidence. It may in its discretion take evidence in other than testimonial form, having the right to rely upon records and other materials furnished to the Committee in response to its request for assistance in its inquiries. The Committee may in its further discretion determine whether evidence to be taken in testimonial form shall be taken in person at the hearing or upon deposition, but all testimonial evidence shall in either event be taken under oath. A complete stenographic record of the hearing shall be kept, and a transcript may be ordered by the Applicant at the Applicant’s own expense.
In this case, the initial evidence was provided by Mr. Matt with his application for admission and the accompanying questionnaire. He had access to the complete investigative file of the Committee and the complete transcripts of each hearing for his own review. At each successive hearing, the Committee’s questions became more detailed and specific. Such questioning was the logical result as more information was disclosed during the course of the proceedings.
We point out that as discussed under Issue II, the Committee erred in imposing the burden of proof on Mr. Matt. However, we conclude that he was in no way prejudiced or misled by that error. He received *358 proper notice of the hearings and had every opportunity to appear and participate in those hearings.
We conclude that the record does not establish that Mr. Matt was deprived of due process in any manner in the hearings before the Committee. We further conclude that he was adequately informed of the nature of the evidence against him and was afforded an opportunity to rebut that evidence. The requirements in Pedersen were met.
We hold the Committee did not violate Mr. Matt’s constitutional right to due process.
Affirmed.
CHIEF JUSTICE TURNAGE and JUSTICES HARRISON, HUNT and McDONOUGH concur.