IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 00-329
2001 MT 108

IN RE THE PETITION OF THE )
STATE BAR OF MONTANA )
FOR A DUES INCREASE )

OPINION
AND
ORDER

## Introduction

¶1    The State Bar of Montana has petitioned this Court to increase the annual dues for active members of the State Bar from $100 to $150, to increase the dues for inactive members from $50 to $75, and to amend the By-Laws of the State Bar of Montana to provide a mechanism for the Board of Trustees to report to the Court once every five years, with the report to serve as the basis for any recommendation by the Board for a change in dues. The State Bar represents that general dues for active members of the State Bar were set at $100 per year in 1974, and, some 27 years later in 2001, they remain at $100. Despite the efforts of Bar management to develop alternative sources of revenue, it became apparent in 1996 that the Bar could not continue to serve its historic purposes without a dues increase. The Board of Trustees thus put the question of a dues increase to the membership for a referendum vote. The referendum was defeated by a two-to-one margin.

¶2    The Bar further represents that expenses cannot be further reduced and that without additional funding, it will be unable to continue many of its programs. More than 56 percent of the Bar's funding now comes from non-dues income and all substantial non-dues revenue

1

sources have been exhausted. The State Bar budget for next fiscal year projects a deficit of $120,000, and it is estimated that in five years, absent a dues increase, the Bar will have a negative general fund balance of $248,000. The Bar's general fund budget is approximately $800,000 per year.

¶3  The State Bar's petition was published in The Montana Lawyer and comments were invited. Numerous objections to the Bar's petition were lodged. Generally speaking, the objectors question the need for a dues increase. More importantly, however, they contend that when the Supreme Court ordered unification of the State Bar in *In re President of the Mont. Bar Ass'n* (1974), 163 Mont. 523, 527, 518 P.2d 32, 34, the Court made it clear that it would approve dues increases only as provided in the by-laws. Under the State Bar's present by-laws, there can be no dues increase without the approval of a referendum vote of the membership. Article XV (Amendment). In the absence of a referendum vote, they contend that it is premature to present the issue to the Supreme Court for approval. Secondly, as to the proposed amendment to the by-laws regarding future dues increases, the objectors argue that, under Article XV, there is no provision for the Supreme Court to unilaterally amend the by-laws.

¶4  In response to the objectors, the State Bar acknowledges that the present by-laws specifically provide that dues may be increased only by a referendum vote of the entire membership. The State Bar, however, contends that the Supreme Court retains ultimate

control over the State Bar and that as an essential function of that governance the Court must assure that funds are available to support Bar programs and services.

¶5 We agree with the objectors that under the 1974 Order unifying the Bar, the Supreme Court created a system whereby membership dues are, in the first instance, to be set by the State Bar in accordance with the by-laws of that organization, subject to the "approval" of the Montana Supreme Court. We further agree that under the present by-laws, there can be no dues increase for the Supreme Court to approve unless and until such an increase has been adopted by a referendum vote of the Bar membership. To date, there has been no referendum vote approving a dues increase. Furthermore, we cannot, consistently with the structure we established in the 1974 Order, unilaterally "approve" an increase in dues that has not first been adopted pursuant to the very by-laws envisioned in that Order. Likewise, we did not, in the 1974 Order, give this Court leeway to unilaterally amend the by-laws. Accordingly, we deny the State Bar's petition for a dues increase and deny the request that we amend the by-laws.

¶6 However, for the reasons set forth below, we determine that the 1974 Order unifying the Bar, as interpreted by this Court in subsequent decisions, is at best unworkable and at worst unconstitutional.

## Discussion

¶7 In January of 1974, this Court invoked its constitutional power to "govern and control the practice of law in Montana." See *In Re President of the Mont. Bar Ass'n*, 163 Mont. at

3

526, 518 P.2d at 33; Art. VII, Sec. 2, Mont. Const. In its Unification Order, the Court specifically directed that "[e]ach active member shall pay the annual attorney license fee provided by law and shall pay such membership dues in the Unified Bar of Montana as are approved by the Montana Supreme Court and contained in the by-laws." *In Re President of the Mont. Bar Ass'n,* 163 Mont. at 527, 518 P.2d at 34.

¶8 The Court directed that an organizational committee draft a constitution and by-laws. The drafting was accomplished, and the Constitution and by-laws of the State Bar of Montana were adopted by the Supreme Court on January 23, 1975. Five months later, the Board of Trustees adopted a resolution to amend the by-laws to increase the annual dues from $40 to its current $100 level for active members. The increase was approved at the first annual meeting.

¶9 The 1975 dues increase was challenged as an abrogation of the Court's authority to control the Bar. But as noted in *Douglas v. State Bar* (1978), 183 Mont. 149, 598 P.2d 1078 [*Douglas I*], and *Douglas v. State Bar* (1979), 183 Mont. 155, 598 P.2d 1080 [*Douglas II*], a question arose as to whether the Court's 1975 Order adopting the Bar's Constitution and by-laws had indirectly given the Bar unilateral control over dues increases. As the Court explained in *Douglas I*:

> It appears a major opposition to the Unified Bar of Montana was a fear of dues increases not approved by this Court. It would appear that this was one reason for our statement in the 1974 order retaining the power to approve or disapprove dues increases. However, by issuing the 1975 order adopting the constitution and by-laws substantially as presented to this Court by the

4

organizational committee, we may have handed authority over dues increases to the Unified Bar.

183 Mont. at 153, 598 P.2d at 1078.

¶10 The Court accepted original jurisdiction to address the apparent conflict. Then in *Douglas II*, the Court ruled that the 1975 Order controlled for purposes of that action and held "[a]ccordingly, the dues increase voted upon by the membership and without the approval of this Court, was proper." *Douglas II*, 183 Mont. at 156, 598 P.2d at 1081. The Court in effect ratified the increase that the membership already had approved.

¶11 Ratification of the membership's vote did not, however, signal the Court's abdication of its reserved right to control prospective dues increases. The Court observed that:

> The problem . . . of future dues increases, continues to fester. We noted in the first *Douglas* case that a significant opposition to a unified bar in this state was prompted by a fear that fees would be increased without a vote of the full membership. These people did not want their dues increased solely by a vote of those attending the annual bar convention meeting. This, indeed, was one of the reasons for our 1974 order wherein we specifically reserved the right to approve or disapprove of membership dues. This Court realized that often members cannot afford to, or for some other reason cannot or will not attend the annual meetings. Nonetheless, they should have a voice in determining whether their annual dues are to be increased. Presently, the voice is limited to those who attend the annual meetings.
>
> We also noted in the first *Douglas* opinion that this Court inadvertently passed control over dues increases to the State Bar of Montana. That was something this Court did not intend to do. As far as the future is concerned, it should not stand unrectified. *By retaining the authority to approve or disapprove of annual dues increases in this Court, the entire membership will have an opportunity to register their approval or disapproval.* Clearly, the entire membership should have a say.

5

> We cannot grant relief to the plaintiff in this case. However, this Court will, by appropriate order, reinstate our authority to approve or disapprove of future dues increases. The State Bar of Montana will be instructed to take appropriate action to comply with the order of this Court.

*Douglas II*, 183 Mont. at 158-59, 598 P.2d at 1082-83 (emphasis added).

¶12 There is no record of the Court's instruction to the State Bar having ever been implemented.

¶13 The by-laws were amended in 1985 to eliminate the sliding dues scale and the maximum assessment of $100 was unchanged. In an initiative in 1987, the membership, by a 642 to 595 vote, amended the by-laws by adding the following language:

> However, all changes in dues and fees may be amended or repealed only through the referendum procedure in Article XIII by a majority vote of the voting active members.

The referendum procedure itself was modified as follows:

> These by-laws, including all changes in dues and fees, may be amended or repealed only through the referendum procedure in Article XIII by a majority vote of the voting active members.

¶14 Despite the Court's reserving the right to "approve or disapprove" future dues increases in *Douglas II*, no one challenged the 1987 member-initiated by-law amendments. A referendum comporting with the amended procedure failed in 1996 by a two-to-one margin, despite concerted efforts by Bar leadership to convince its membership that a dues increase was necessary and explain how the revenues would be spent. Only 60 percent of the active members voted.

6

¶15     In an attempt to clarify procedure, the State Bar's Board of Trustees amended the dues-related by-laws in 1990 and again at the September 2000 Annual Meeting. Article XV currently provides:

> These by-laws may be amended or repealed at any meeting of the Board of Trustees of the State Bar by majority vote of the Board of Trustees, provided notice setting forth the proposed amendment shall be given all Board of Trustee members in the notice of the meeting. However, all changes in dues and fees and Article VII, Section 4 (powers of annual meeting) may be amended or repealed only through the referendum procedure in Article XIII by a majority vote of the voting active, active military service and judicial members.

¶16     In summary, the Court, 27 years ago, created a unified Bar in Montana for the purposes of: aiding the Court in maintaining and improving the administration of justice; maintaining high standards of integrity, conduct, competence and public service on the part of practicing attorneys; providing a forum for the discussion of subjects pertaining to the practice of law; and insuring that the responsibilities of the legal profession to the public are more effectively discharged.

¶17     The Order Unifying the Bar provides for membership dues as are approved by the Montana Supreme Court and contained in the by-laws. In *Douglas II*, in order to protect the Bar membership's right to register its say as to the dues structure, we reiterated that the Court retained the authority "to approve or disapprove of annual dues increases."

¶18     In the years since the 1974 Order Unifying the Bar, the Bar has, pursuant to this Court's Order Unifying the Bar, adopted and amended by-laws. Those by-laws presently provide that all changes in dues and fees may be amended or repealed only through the

7

referendum procedure by a majority vote of the voting active members. Article XV. With the Bar membership effectively in control of the dues structure, the Court's ability to govern and control the practice of law is considerably hampered.

¶19 The time has come to review the provisions of the 1974 Order Unifying the Bar and determine whether that Order and our decision in *Douglas II* comport with our constitutional obligations. Article VII, Section 2, of the Montana Constitution states that the Supreme Court is to govern and control the practice of law. The Court has, in part, exercised this constitutional power to govern and control the practice of law through the creation of a Unified Bar. The Bar, of course, cannot carry out the Supreme Court's unification directives without dues revenue. However, under the present unification order, the dues structure is, in the first instance, a function of membership vote—subject only to the "approval or disapproval" of the Supreme Court. We determine that this structure of shared control over the dues revenue of the Bar does not comport with Article VII, Section 2, of the Montana Constitution, which places the governance and control of the practice of law solely with the Supreme Court.

¶20 The structural deficiencies set forth above do not alter the fact that the Court needs a unified bar to assist in the governance and control of the practice of law. In our 1974 Order we noted the need to promulgate and maintain ethical standards, the need to provide continuing legal education and the need to provide for the availability of legal services to all. In the past 27 years, we have seen a marked increase in the number of ethical complaints

coming before the Commission on Practice; we have seen an increase in the number of practitioners coupled with greater specialization in the practice of law; and we have experienced a drastic reduction in the funding for legal services for those unable to afford attorneys. There is little question but that our concerns with ethical conduct, continuing legal education and availability of legal services to all are even more compelling now than they were 27 years ago. The State Bar should continue with its efforts to help fund legal services. In addition, we recognize that attorneys impaired by alcohol, drugs or mental problems adversely affect the practice of law, damaging both their clients and the credibility of the profession. Thus, the State Bar of Montana must continue to address the Court's and the legal profession's responsibilities to the public through such programs as Lawyers Helping Lawyers; Lawyers Fund for Client Protection; and arbitration of fee disputes.

¶21 As the United States Supreme Court noted in *Keller v. State Bar of California* (1990), 496 U.S. 1, 12, 110 S.Ct. 2228, 2235, 110 L.Ed.2d 1, 13, "[i]t is entirely appropriate that all of the lawyers who derive benefit from the unique status of being among those admitted to practice before the courts should be called upon to pay a fair share of the cost of the professional involvement in this effort."

¶22 Thus, in order to fulfill our constitutional duty to govern and control the practice of law in the State of Montana, we conclude that it is necessary that the 1974 Order Unifying the Bar be amended to provide that annual membership dues will be set at the sole discretion of the Supreme Court.

¶23    Accordingly, IT IS HEREBY ORDERED THAT:

¶24    (1) The rationales set forth for unification of the Bar in Sections 1(a), (b) and (d) of the 1974 Order Unifying the Bar are hereby reaffirmed.

¶25    (2) Section (1)(c) of the 1974 Order is hereby amended to read:

> All persons now or hereafter admitted to practice law before the Supreme Court of this State, excluding judges of courts of record, are declared to be active members of the Unified Bar of Montana. Each active member shall pay the annual attorney license fee provided by law and shall pay such membership dues in the Unified Bar of Montana as are established in the sole discretion of the Montana Supreme Court. Effective March 1, 2002, the membership dues are set at $150 per year for active members of the Bar and $75 per year for inactive members. Nonpayment of membership dues shall result in suspension of membership and the right to practice law until payment.
> Any future dues changes, while in the sole discretion of the Court, shall be implemented only after giving the Bar membership notice of the proposed change and a 90-day period to comment on the proposed change.

¶26    (3) Section 1(f) of the 1974 Order is amended to read:

> The Montana Supreme Court shall possess and retain original and exclusive jurisdiction in the enforcement of professional ethics and conduct of the members of the Unified Bar of Montana, as provided in the Code of Professional Responsibility as now existing or which may hereafter be adopted. The practice and procedure of the Commission on Practice of the Supreme Court of the State of Montana as provided in the existing order covering the same in Supreme Court Cause No. 10910, dated January 5, 1965, or as the same may hereafter be amended shall be retained. The Supreme Court retains the authority to assess Bar members, in addition to Bar membership dues, such annual assessment as deemed necessary, in the Court's discretion, to fund the investigation, prosecution, presentation and resolution of matters before the Commission on Practice.

¶27    (4) Beginning in March 2003, the State Bar of Montana shall report annually to the Court as to the financial status of the Bar. Beginning in March 2005, and every three years

thereafter, the State Bar shall file with the Court a special report analyzing the dues structure in light of the Bar's responsibility to address the purposes of the Unified Bar as stated herein and in paragraph 1(b) of the 1974 Order.

¶28 (5) The State Bar of Montana is hereby directed to amend the by-laws to conform to this Order and submit the amended by-laws to this Court for approval, rejection or modification no later than December 31, 2001.

¶29 (6) Notice of this Order shall be given by mailing a copy of this Order to each attorney licensed to practice law by this Court.

DATED this 19th day of June, 2001.

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

11

Justice Jim Rice dissenting.

¶30  I respectfully dissent from the Court's order.

¶31  The Court today abrogates the Bylaws of the State Bar of Montana, imposes a 50% dues increase upon the membership, and disenfranchises the membership of its suffrage in regard to future dues increases. While I recognize the Court's constitutional authority to govern the practice of law in Montana, I do not believe such drastic measures are warranted.

¶32  Bypassing the requirements of its own Bylaws, the State Bar has petitioned the Court for a dues increase without first submitting the question to the membership. On that basis alone, I would deny the petition.

¶33  As grounds for the petition, the State Bar complains that our state's dues are among the lowest in the nation, that some State Bar programs are jeopardized, and that the 1996 dues referendum was defeated by the membership.

¶34  It must be remembered that the 1996 referendum was interwoven with a controversial Commission on Practice plan. Further, many members did not feel that the State Bar had adequately explained the purpose for the increased revenue. Exercising its collective prerogative, the membership rejected the proposed increase.

¶35  The State Bar appears to have concluded that the referendum vote of five years ago is an indicator of the membership's permanent opposition to any and all dues increases, for whatever purpose, a conclusion which is not reasonable and to which I do not subscribe. A plan to moderately increase the dues to support important bar programs would find much

12

fertile ground within the membership, but such a plan has not been offered. The State Bar has not responded to the membership, learned from the mistakes in 1996, and altered its course accordingly. I cannot conclude that the State Bar has acted with the due diligence that would entitle it to the extraordinary relief provided herein.

¶36 While inflation has eroded the value of the dues established in 1974, it should not be forgotten that the dues were increased by 150% that year. Since then, there has been a substantial increase in membership, substantially increasing the State Bar's budget. Further, to its credit, the State Bar has creatively enhanced its revenue from non-dues sources, and the State Bar's reserves currently stand at a half million dollars. While the State Bar is experiencing revenue shortfalls, and there are dark clouds on the distant horizon, I do not believe this mandates a conclusion that the 1974 Unification order is "unworkable," or that a crisis exists of a magnitude that would justify the Court's actions herein. In the context of governmental funding, compulsion of revenue by the courts is reserved for situations constituting an emergency. *Butte-Silver Bow v. Olsen* (1987), 228 Mont. 77, 743 P.2d 564. While this is not a matter of governmental funding, the comparison is helpful. I do not believe the circumstances here constitute an emergency, and if one should develop which necessitated intervention, the Court should consider at most, a temporary dues assessment that would not permanently erase the rights of the membership.

¶37 Most troubling is the Court's elimination of the membership's right to vote on future dues increases in exchange for a 90-day comment period. After the Court has ignored the

13

results of a profession-wide referendum in issuing this order, many members may legitimately doubt that a "90-day comment period" will provide an efficacious opportunity to express their concerns about future dues increases.

¶38 Many opponents to future dues increases will be silenced. Currently, a member's opposition to an unreasonable dues proposal can be confidentially expressed "in the privacy of the polling booth." In the future, a member will be required to take a public stand in order to register his opposition to the State Bar's proposals. As a result, there will be a chilling effect on the membership's speech and participation rights, an ironic consequence of the Court's exercise of constitutional power.

¶39 Further, the Court is creating the temptation for the State Bar, whenever the budget becomes tight--and budgets generally do--to run to the Supreme Court for additional funding. Instead, the State Bar should listen to its membership, and make budgeting decisions based upon revenue that the membership provides. The Court's order eliminates the State Bar's financial accountability to its members, the consequences of which are predictably unfortunate.

¶40 I would deny the State Bar's petition, and grant no other relief.

_____
Justice

Justice James C. Nelson concurs.

¶41   While I understand the perspective from which Justice Rice dissents from this Court's order, I respectfully suggest that his opinion misses the fundamental point of our decision. This Court, and this Court alone, bears the constitutional obligation--and concomitantly, has the authority--to govern and control the practice of law in this State. *See* Article VII, Section 2(3), Constitution of Montana. The dues provision under our 1974 Unification Order contravenes this authority. It always did. *See Application*, 163 Mont. at 527, 518 P.2d at 34.

¶42   For reasons that are lost in history (but which I suspect were driven by an attempt to appease Bar members angered by the 1974 Unification Order), we approved the 1975 By-Laws with the provision allowing the Bar membership to effectively set the dues for the operations of the integrated Bar--an organizational structure which we mandated into existence pursuant to our constitutional authority. When the challenge to this dues provision was raised in *Douglas I,* we ostensibly recognized the problem for what it was: an abrogation of our constitutional duty to set dues. Nonetheless, in *Douglas II*, in a continuing effort to placate the dissatisfied faction of the Bar membership, we punted.

¶43   And this is the point that Justice Rice's dissent misapprehends. Setting the dues necessary to fund and operate the State Bar of Montana never was, constitutionally, the prerogative of the Bar membership. Indeed, submitting yet another proposed dues increase to the members of the Bar; separating out the "controversial Commission on Practice plan" from the dues increase proposal; and hoping to find "fertile ground" by the Bar leadership

offering a proposal for a "moderate" dues increase may well convey the sonorous ring of political compromise, but these suggestions miss the point completely. These proposals do not solve the underlying constitutional problem of this Court "hand[ing] authority over dues increases to the Unified Bar." *Douglas I*, 183 Mont. at 153, 598 P.2d at 1080. Rather, these proposals merely prolong and exacerbate what amounts to an unconstitutional delegation of this Court's dues authority to the members of the Bar. Purely and simply, the matter of dues is not the Bar membership's call. It is the Court's, under Montana's Constitution.

¶44 We were wrong to not address this problem squarely and honestly in *Douglas II*; we failed in our obligation to resolve the issue once and for all then; and putting off the inevitable to another day and another Court is a cop-out.

¶45 I am absolutely satisfied that we have made the legally correct decision here. Unfortunately, that we have chosen to let this sore fester for nearly 20 years makes lancing the boil no less necessary--it only makes the operation a good deal more painful.

_____
                          Justice

Chief Justice Karla M. Gray concurs in the foregoing concurrence.

_____
                          Chief Justice

16

Justice Terry N. Trieweiler concurs.

¶46    I agree and join in Justice Nelson's concurring opinion. I would also add the following observations regarding Justice Rice's dissent.

¶47    Justice Rice defends the membership's rejection of a dues increase in 1996 based on many members' feelings that the Bar had not adequately explained the need for the increased revenue. As one who personally followed the 1996 campaign, I disagree. Any member of the State Bar who did not understand the need for the increased revenue did not care. Bar officials traveled from one end of the state to the other and met with every county bar association which expressed an interest in an effort to communicate the importance of and need for a dues increase. To suggest that a majority of the Bar's members would willingly accept responsibility for financing the operations of an integrated bar if only given enough information is a lame excuse for avoiding this Court's constitutional responsibility to govern and control the practice of law as the majority of the Court deems necessary based on the facts presented to us.

¶48    I also disagree with Justice Rice's suggestion that there is something helpful about a comparison of this Court's constitutional obligation to govern and control the practice of law and prior decisional law regarding compulsion of governmental funding by another branch of the government. No comparison could be less helpful. In one instance, this Court is performing its constitutional obligation. In the other, restraint is exercised to avoid constitutional conflicts. The comparison is like apples and oranges.

17

¶49    Finally, I disagree that this Court should listen to the expression of opinions by individual Bar members "in the privacy of the polling booth." As Justice Nelson pointed out, it is this Court's constitutional obligation to control the practice of law in this state. Anyone who has an intelligent or rational suggestion about how that responsibility can be effectively carried out is welcome to and has had the opportunity to express that opinion. The only message that can be inferred from the results of the polling booth is that a majority of those members of the profession who voted on the dues increase issue would rather sacrifice Bar programs from which they may not feel a direct benefit than increase their own overhead.

¶50    Justice Rice advises caution absent an emergency. Fortunately, our constitution does not condition this Court's responsibility to govern and control the practice of law on the existence of an emergency. Government that reacts only to emergencies is doomed to failure.

¶51    For these reasons, I join in the Court's order amending the State's by-laws and imposing a dues increase on the membership of the State Bar of Montana.

_____
                                          Justice

18