JUSTICE COTTER
dissenting.
¶34 I dissent. I would affirm the decision of the District Court, though on slightly different grounds, and direct the Montana Secretary of State to strike VanDyke’s name from the ballot.
¶35 In my judgment, the Court goes astray by relying upon Article VII, Section 9 of the Montana Constitution and its gleaning of the framers’ intent, to the neglect of the clear import of Article VII, Section 2(3). Article VII, Section 2(3) of the Montana Constitution provides that the Supreme Court “may make rules governing appellate procedure, practice and procedure for all other courts, admission to the bar and the conduct of its members.” Thus, the framers placed in this Court’s hands the full authority to define and circumscribe what constitutes the practice of law in Montana. We have stated that Article VII, Section 2 of the Montana Constitution “places the governance and control of the practice of law solely with the Supreme Court,” In re State Bar for Dues Increase, 2001 MT 108, ¶ 19, 305 Mont. 279, 53 P.3d 854, and that it “specifically grants this Court the power to make rules governing admission to the bar and the conduct of its members.” In re Pres. of Mont. Bar Assn., 163 Mont. 523, 524, 518 P.2d 32 (1974) (citing Mont. Const. art. VII, § 2); see also In re Matt, 252 Mont. 345, 348, 829 P.2d 625, 627 (1992) (citation omitted) (“[T]he ultimate decision regarding the admission of attorneys in Montana rests exclusively with this Court.”); In re Verified Pet., 250 Mont. 325, 329, 820 P.2d 1288, 1290 (1991) (“In matters relating to the admission of attorneys to the Montana Bar, and the conduct of members of the bar, this Court’s power is both broad and exclusive.”).
¶36 In January 1974, this Court invoked its constitutional power “to govern and control the practice of law in Montana” when it issued its Unification Order and directed the Bar to present for this Court’s adoption proposed rules for the Bar’s government, admission of attorneys to the practice of law, and the conduct of its members. Pres. of Mont. Bar Assn., 163 Mont. at 526-28, 518 P.2d at 33-34. The Court makes reference in its Opinion to our exercise of this constitutional power but fails to acknowledge its significance to the resolution of this case.
*549 ¶37 When the drafters adopted Article VII, Section 3(2) of the Montana Constitution and “place[d] the governance and control of the practice of law solely with the Supreme Court,” State Bar for Dues Increase, ¶ 19, they gave us a clean slate upon which to write the rules regulating the practice of law. In the years since our 1974 Order unifying the Bar, the By-Laws of the State Bar, initially adopted by us and subsequently amended pursuant to our constitutional power, have clearly delineated who can practice law in this state and who cannot. State Bar for Dues Increase, ¶ 18; see also e.g. In re the Unified Bar of Mont., 165 Mont. 1, 5-8, 530 P.2d 765, 767-68 (1975) (approving initial Unified Bar By-Laws). Because the drafters of the Constitution tasked this Court with making the rules that would govern the practice of law, it is unnecessary to engage in a present-day debate about what the drafters may have intended in 1972 by the language “admitted to the practice of law.” See Opinion, ¶¶ 21-28. What they clearly intended then and did in fact do was delegate to this Court the full authority to give meaning and parameters to that phrase. Thus, what matters here and now is how this Court has defined and constrained the admission to the practice of law in this state.[1]
¶38 We therefore look to the By-Laws of the State Bar of Montana to determine whether VanDyke was “admitted to the practice of law in Montana” while on inactive status. Though he was licensed and eligible to practice law in Montana, VanDyke was not admitted to practice law in Montana while inactive because he was barred during that timeframe from practicing law in any Montana courtroom. Article I, Section 3(b) of the By-Laws provides that, “[e]xcept as provided in subsection (g) of this section, only active and active military service members may practice law in the State of Montana.” Inactive members are those “who are eligible for active membership but are not engaged in the practice of law in Montana.” By-Laws, art. I, § 3(a)(iii). “[N]o ... inactive member... may practice law in this state.” By-Laws, art. I, § *550 3(f)-
¶39 In order to practice law in a Montana courtroom, VanByke was required to meet certain “practice requirements.” Article I, Section 5(a) of the By-Laws states: “To practice law in the state courts of Montana, a member must: (i) have paid dues and assessments for active membership ..., (ii) have completed all continuing legal education ..., (iii) have paid all license taxes ..., [and] (iv) be free of suspension or other discipline imposed by the Montana Supreme Court Commission on Practice.” Because VanByke opted not to meet these requirements, he could not practice law in Montana. Indeed, had he attempted to do so, VanByke would have been subject to misdemeanor prosecution and a contempt of court citation. By-Laws, art. I, § 5(b).
¶40 The Court overcomplicates the analysis of the question presented. The State Bar By-Laws clearly and plainly prohibited VanByke from practicing law in Montana while on inactive status. Moreover, for over five years VanByke availed himself of the benefits of inactive status by paying reduced Bar dues, freeing himself from the payment of assessments to the Lawyers’ Fund for Client Protection, and avoiding the CLE requirements imposed on active bar members. Having done so, he should be estopped from now asserting that he was admitted to practice law in Montana during those same five years. He cannot have it both ways, and the Court errs by concluding otherwise.
¶41 Because VanByke was not “admitted to the practice of law in Montana for at least five years prior to the date of ... election,” as required by Article VII, Section 9(1) of the Montana Constitution and as circumscribed by the State Bar By-Laws approved by this Court, he is not qualified to have his name placed on the ballot as a candidate for the position of Supreme Court Justice. I dissent from the Court’s contrary conclusion.
BISTRICT JUBGES SANBEFUR and McLEAN join the dissent.

 The inclusion of Section 3(2) in Article VII governing The Judiciary also readily explains why the contents of Article VI governing The Executive carry no persuasive value. The Court states that the two articles must be viewed together. Opinion, ¶ 18. However, their respective inclusions and omissions dictate otherwise. Article Vn confers upon this Court “the ultimate decision regarding the admission of attorneys in Montana,” permitting this Court to fashion practice qualifications for all attorneys. Verified Pet., 250 Mont. at 328, 820 P.2d at 1290. Because there is no corresponding provision in Article VI conferring upon the executive branch the authority to determine the practice qualifications for any attorneys, including the Attorney General, elaboration concerning those qualifications in Article VI was necessary.