JUSTICE COTTER
delivered the Opinion of the Court.
¶ 1 Randall Simms appeals from the Memorandum and Order (Order) of the First Judicial District Court of Lewis and Clark County, Montana, granting the Montana State Fund’s (MSF) petition to disseminate video footage taken of him in public places. The videos were deemed confidential criminal justice information (CC JI) by the District Court and the Order allowed them to be used in relation to Simms’ workers’ compensation (WC) claim in any manner consistent with the Montana Rules of Civil Procedure and Workers’ Compensation Court (WCC) procedures. Simms appeals. He argues that MSF did not have standing to file an action for dissemination under the Montana Criminal Justice Information Act of 1979 (Act), and that the District Court inadequately balanced the demands of individual privacy against the merits of disclosure, did not follow established rules of statutory construction, and improperly identified and weighed the competing interests at issue.
¶2 We affirm.
ISSUES
¶3 Simms raises four issues on appeal. A restatement of the dispositive issue is:
¶4 Did the District Court err when it authorized MSF to disseminate certain confidential criminal justice information for use in a pending matter?
FACTUAL AND PROCEDURAL BACKGROUND
¶5 Simms was injured in the course and scope of his employment on May 3,1999, while working for Bozeman Glass in Bozeman, Montana. MSF provided WC insurance to Simms’ employer at the time of the injury and accepted Simms’ claim. Simms’ condition deteriorated over *16 time, and he was found to be permanently and totally disabled and unable to return to work. Simms was then diagnosed with Complex Regional Pain Syndrome (CRPS), which restricted his ability to move around and use his extremities, confined him to a wheelchair, required domiciliary care, and prevented him from driving.
¶6 Due in part to the CRPS diagnosis, Simms and MSF agreed to settle for $610,000 in March 2006. The settlement closed various benefit categories while leaving open certain medical benefits causally related to the injury. Believing Simms’ “ongoing disability condition... was a continuation of the compensable effects of the industrial injury,” MSF continued to pay medical benefits for Simms.
¶7 MSF routinely performs ongoing verifications of disabilities, and decided to do so in Simms’ case. As established under §39-71-211, MCA, and pursuant to Executive Order No. 15-93, MSF has a specific unit-a confidential criminal justice agency-to prevent and detect fraud. The Fraud Unit includes the Special Investigative Unit (SIU) which performs the investigations. MSF utilized the services of the SIU to investigate Simms. In August and September 2002 and September 2006 through May 2007, the SIU took multiple videos of Simms in public settings, looking for evidence of his physical activities and his possible ability to return to work. The twelve DVDs include two videos taken in 2002 and videos taken on more than ten occasions in 2006 and 2007, apparently totaling over two hours of footage.
¶8 In January 2007, MSF’s attorney sent a letter, together with copies of the videos, to Simms’ attorney for review. The letter noted that Tt]he dramatic change of condition is apparent,” and the presumptions used when settling the case ‘have ... proven to be erroneous, at a minimum.”Later in June 2007, MSF disseminated the videos to Simms’ treating physician and asked for his interpretation of the content. The physician sent a letter back to MSF dated June 28, 2007. The physician found the activity on the videos inconsistent with the information provided by Simms, which caused MSF to believe Simms’ disability status required re-evaluation and that probable cause existed to conduct further investigation. MSF considered the videos CCJI from that point onward.
¶9 On August 27, 2007, MSF moved the District Court for an order authorizing it to receive CCJI pertaining to Simms from the SIU. According to MSF, the videos showed that Simms “may have exaggerated the extent of his physical handicaps and/or faked or feigned his disability,’’potentially committing fraud. The court ordered the SIU to release the investigative file concerning Simms’ WC claim, which meant disseminating the CCJI to MSF, including the videos. *17 MSF then initiated a civil proceeding against Simms in WCC on September 20, 2007, titled Mont. State Fund v. Randall Simms, No. 2007-1955. This proceeding remains pending.
¶10 In a separate WCC proceeding, No. 2009-2242, MSF sought an Independent Medical Examination of Simms in December 2010. The WCC found MSF had improperly released the videos to the treating physician during that proceeding and barred it from using the videos and the physician’s letter in the proceedings, though the court declined Simms’ request to prevent the use of the videos in all further related proceedings.
¶11 In response to the foregoing WCC ruling, MSF formally petitioned the District Court on March 18, 2011, for the release of certain CCJI, as allowed under § 44-5- 303, MCA. MSF had previously submitted several videos to the court under seal for in camera review, and MSF sought permission from the District Court to use and disseminate them. Simms objected to MSF’s petition, and the court ordered that the videos remain under seal pending the court’s decision on the petition. ¶12 Simms moved to dismiss MSF’s petition on March 31, 2011, arguing that MSF lacked standing to bring the petition and therefore there was an absence of a case or controversy for determination. Both parties briefed the issues. On June 13,2011, the District Court granted MSF’s petition, releasing the videos to MSF and authorizing MSF to use the video footage in the ongoing WCC proceeding No. 2007-1955 for any purpose authorized under the Montana Rules of Civil Procedure and the WCC procedure. The District Court specifically noted it made no ruling on whether the videos should be admitted in the WCC proceedings, which it noted was a decision for the WCC judge to make. Although it did not specifically rule on Simms’ motion to dismiss the MSF petition, it is implicit from the court’s Order that the motion to dismiss was denied.
¶13 Simms appeals.
STANDARD OF REVIEW
¶14 We review de novo a district court’s ruling on a motion to dismiss. Grizzly Sec. Armored Express, Inc. v. Armored Group, LLC, 2011 MT 128, ¶ 12, 360 Mont. 517, 255 P.3d 143. A district court’s determination regarding standing presents a question of law which we review de novo for correctness. Aspen Trails Ranch, LLC v. Simmons, 2010 MT 79, ¶ 30, 356 Mont. 41, 230 P.3d 808 (citing In re Charles M. Bair Family Trust, 2008 MT 144, ¶ 86, 343 Mont. 138, 183 P.3d 61); Heffernan v. Missoula City Council, 2011 MT 91, ¶ 28, 360 Mont. 207, 255 P.3d 80.
*18 ¶15 A district court’s interpretation and application of a statute is a conclusion of law which we review for correctness. In re Adoption of S.R.T., 2011 MT 219, ¶ 11, 362 Mont. 39, 260 P.3d 177.
DISCUSSION
¶16 Did the District Court err when it authorized MSF to disseminate certain confidential criminal justice information for use in a pending matter?
¶17 Simms argues on appeal that the petition to disseminate the videos should have been dismissed. He alleges that MSF did not have standing to bring the petition under §44-5-303, MCA, and therefore the District Court did not have jurisdiction over the matter. Conversely, MSF argues that it had standing and was allowed to file an action for the dissemination of information it considered appropriate and permissible under § 44-5-303(6), MCA. MSF also asserts that the District Court properly performed the requisite balancing test before concluding that MSF was allowed to use the videos.
¶18 Both the WCC and the District Court concluded that the videos were CCJI during this stage of the proceedings, and this ruling has not been appealed. The Act describes the procedure for the dissemination of CCJI, and provides in pertinent part:
(1) Except as provided in subsections (2) through (4), dissemination of confidential criminal justice information is restricted to criminal justice agencies, to those authorized hy law to receive it, and to those authorized to receive it by a district court upon a written finding that the demands of individual privacy do not clearly exceed the merits of public disclosure. Permissible dissemination of confidential criminal justice information under this subsection includes receiving investigative information from and sharing investigative information with a chief of a governmental fire agency organized under Title 7, chapter 33, or fire marshal concerning the criminal investigation of a fire.
(6) The procedures set forth in subsection (5) are not an exclusive remedy. A person or organization may file any action for dissemination of information that the person or organization considers appropriate and permissible.
Section 44-5-303(1), (6), MCA (emphasis added). Under §44-5-303(6), MCA, MSF as an organization is allowed to file an action for the dissemination of information MSF believes to be “appropriate and *19 permissible.” The District Court therefore did not err in implicitly denying Simms’ motion to dismiss for lack of standing.
¶19 As defined by the Act, CCJI includes “criminal investigative information,” “criminal justice information or records made confidential by law,” and “any other criminal justice information not clearly defined as public criminal justice information.” Section 44-5-103(3)(a), (d), (e), MCA. ‘Criminal investigative information”is defined as:
information associated with an individual, group, organization, or event compiled by a criminal justice agency in the course of conducting an investigation of a crime or crimes. It includes information about a crime or crimes derived from reports of informants or investigators or from any type of surveillance.
Section 44-5-103(6)(a), MCA. “‘Criminal justice information’ means information relating to criminal justice collected, processed, or preserved by a criminal justice agency.” Section 44-5-103(8)(a), MCA. “ ‘Dissemination’ means the communication or transfer of criminal justice information to individuals or agencies other than the criminal justice agency that maintains the information. It includes confirmation of the existence or nonexistence of criminal justice information.” Section 44-5-103(11), MCA.
¶20 The Act defines a “criminal justice agency” as “any federal, state, or local government agency designated by statute or by a governor’s executive order to perform as its principal function the administration of criminal justice.”Section 44-5-103(7)(b), MCA. In its December 2010 order, the WCC determined that MSF in its entirety is not a criminal justice agency; however, the Fraud Unit of MSF, including the SIU, is a criminal justice agency. Dissemination of CCJI is allowed to those other than criminal justice agencies when authorized by a district court to receive it, once the district court produces written findings that the “demands of individual privacy do not clearly exceed the merits of public disclosure.” Section 44-5- 303(1), MCA; see Mont. Const, art. II, §9.
¶21 The District Court conducted the balancing test called for in the statute, addressing the inevitable conflict between the “right to know” and the “right to privacy” to determine if MSF should be authorized to disseminate the CCJI in question. Section 44-5-303(1), MCA; Jefferson Co. v. Mont. Std., 2003 MT 304, ¶ 14, 318 Mont. 173, 79 P.3d 805; Mont. Const, art. II, §9, 10. MSF was required to demonstrate that it was entitled to receive the requested information. Jefferson Co., ¶ 14. It did so by setting forth the reasons for its request and satisfying the requisites of §44-5-303(1) and (6), MCA. At that point the burden *20 shifted to Simms to show why the videos should not be released. Bozeman Daily Chronicle v. City of Bozeman Police Dept., 260 Mont. 218, 227, 859 P.2d 435, 441 (1993). The court considered the arguments of the parties and then applied the two-part test to determine: 1) whether Simms had a “subjective or actual expectation of privacy,” which is a question of fact; and 2) whether society is willing to recognize that expectation as reasonable. Yellowstone Co. v. Billings Gazette, 2006 MT 218, ¶ 20, 333 Mont. 390, 143 P.3d 135; Jefferson Co., ¶ 15; Havre Daily News, LLC v. City of Havre, 2006 MT 215, ¶ 23, 333 Mont. 331, 142 P.3d 864.
¶22 The District Court determined that Simms’ actions documented in the videos took place in public locations, and that Simms did not in any way attempt to conceal his identity or act so as to assert a privacy interest in his actions. The court further found that society would not view as reasonable an assertion of privacy in certain activities performed on public roads and sidewalks. Consequently, the court found that Simms did not have a subjective or actual expectation of privacy, nor did society view his expectation of privacy as reasonable. ¶23 The District Court also found the merits of disclosure to be substantial. The court specified that Tt]he proper operation of the workers compensation system is a substantial societal interest,” and Tt]he videos may bear on a determination of whether Simms engaged in misbehavior concerning his industrial accident.” The District Court therefore concluded that the demands of Simms’ individual privacy did not clearly exceed the merits of public disclosure. See Jefferson Co., ¶ 18.
¶24 We conclude that the District Court did not err when it authorized MSF to disseminate certain CCJI under §44-5-303, MCA. The District Court correctly interpreted the statute and adequately engaged in the statutorily mandated balancing of competing concerns. We therefore will not disturb its decision.
¶25 Finally, we decline to address when the videos became CCJI. As indicated, both the WCC and the District Court concluded the videos are presently CCJI. Whether they were CCJI when the District Court released them in 2007 is not an issue before us in this case. We do emphasize that in future district court or WCC cases involving the potential release of information that could possibly be considered CCJI, the courts must fully comply with the statutory requirements of the Act before authorizing the release of the information.
*21 CONCLUSION
¶26 For the foregoing reasons, we affirm the Order of the District Court.
CHIEF JUSTICE McGRATH, JUSTICES BAKER, WHEAT, NELSON, MORRIS and RICE concur.