DA 14-0259

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 193

LOUISE CROSS, WADE DAHOOD,
JEAN BOWMAN, MICHAEL McKEON,
ARLYNE REICHERT,

      Plaintiffs and Appellees,

   v.

LAWRENCE J.C. VANDYKE,
STATE OF MONTANA, by and through
LINDA McCULLOCH, in her capacity
as Secretary of State,

      Defendants and Appellants.

APPEAL FROM:    District Court of the First Judicial District,
                 In and For the County of Lewis and Clark, Cause No. ADV-2014-224
                 Honorable Mike Menahan, Presiding Judge


COUNSEL OF RECORD:

        For Appellant Lawrence J.C. VanDyke:

            Rob Cameron, Nathan Bilyeu, Gough, Shanahan, Johnson & Waterman,
            Helena, Montana

        For Appellees:

            Peter Michael Meloy, Meloy Law Firm, Helena, Montana

            Gene Jarussi, Bishop & Heenan Law Firm, Billings, Montana


                      Submitted on Briefs:  June 25, 2014
                                 Decided:  July 22, 2014

Filed:

              _____
                        Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Lawrence J.C. VanDyke appeals the First Judicial District Court's grant of summary judgment to the Plaintiffs and Appellees, declaring VanDyke ineligible to seek election to the position of Justice of the Montana Supreme Court in the 2014 general election and directing the Montana Secretary of State to strike his name from the ballot. The only issue on appeal is whether VanDyke's decision to take inactive status with the State Bar of Montana while he practiced law in other states disqualifies him from meeting the constitutional requirement of admission to the practice of law in Montana for five years prior to the election. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 VanDyke was admitted to the Bar of the State of Montana on October 17, 2005. He voluntarily chose inactive status on March 6, 2007, while he was practicing law outside of Montana. On November 28, 2012, VanDyke petitioned this Court for reinstatement to active status in the State Bar of Montana. The Chief Justice signed an order on behalf of the Court on December 5, 2012, directing that, "upon payment of the appropriate fees to the State Bar of Montana, [VanDyke] shall be admitted to the active practice of law in the state of Montana." According to State Bar records, VanDyke was returned to active status on January 8, 2013. The Clerk of this Court issued VanDyke a license "to practice law as an attorney and counselor-at-law in all the courts of this state" each year from 2005 through 2013. The license shows his "Membership Status" as "Inactive" or "Inactive Attorney Member" for the years 2007 through 2012. VanDyke's Membership Status is listed as "Active" for the years 2005, 2006 and 2013. Consistent with Article I, Section 3(a) of the

2

By-Laws of the State Bar of Montana, the license indicates that "[t]he class of inactive members shall include those persons who are eligible for active membership but are not engaged in the practice of law in Montana and have filed with the association written notice requesting enrollment in the class of inactive members."

¶3     On March 10, 2014, VanDyke filed with the Montana Secretary of State his Declaration of Nomination as a candidate for election to the Montana Supreme Court. On March 21, 2014, the Plaintiffs and Appellees, Louise Cross, Wade Dahood, Jean Bowman, Michael McKeon, and Arlyne Reichert (referred to collectively in this Opinion as "Cross") filed their Complaint in the First Judicial District Court, seeking to have VanDyke's candidacy invalidated. Each of the Plaintiffs is a registered Montana voter and each served as a delegate to the 1972 Montana Constitutional Convention. The Complaint alleged that VanDyke is ineligible to seek election to the Montana Supreme Court at the November 4, 2014, general election because he was not "admitted to the practice of law in Montana for at least five years prior to the date of . . . election" as required by Article VII, Section 9, of the Montana Constitution. Cross sought a declaration of VanDyke's ineligibility and a temporary and final injunction excluding his name from both the June 3, 2014, primary election ballot and the November 4, 2014, general election ballot.

¶4     VanDyke filed a petition for writ of supervisory control with this Court on March 28, 2014, urging the Court to take immediate jurisdiction over the action, given that the ballots for the primary election would be printed by mid-April 2014. After receiving Cross's response, we declined to exercise original jurisdiction over the matter, noting Cross's concession that "[i]t is too late for any judicial action affecting the printing of the [primary]

3

ballots." Order on Supervisory Control, *VanDyke v. First Jud. Dist. Ct.*, S. Ct. No. OP 14-0178 (Apr. 9, 2014). We observed that the District Court had scheduled a hearing on the parties' cross-motions for summary judgment on April 23, 2014, and directed the court to issue its ruling within seven days of that hearing.[1] The District Court entered its Decision and Order on April 25, 2014, from which VanDyke now appeals.

## STANDARD OF REVIEW

¶5 This Court exercises plenary review over matters of Constitutional interpretation. *State v. Trier*, 2012 MT 99, ¶ 10, 365 Mont. 46, 277 P.3d 1230.

## DISCUSSION

¶6 Article VII, Section 9(1), of the Montana Constitution, provides in relevant part:

> A citizen of the United States who has resided in the state two years immediately before taking office is eligible to the office of supreme court justice or district court judge if admitted to the practice of law in Montana for at least five years prior to the date of appointment or election.

¶7 The District Court ruled that VanDyke does not meet these minimum eligibility requirements because, when he elected to assume inactive status, VanDyke "could not practice law or represent himself as authorized or qualified to practice law." The court agreed with Cross that "being admitted to the State Bar of Montana is not synonymous with being admitted to the practice of law." Accordingly, although VanDyke was a member of the Bar continuously from October 2005 to the present day and will have been a member for

---

[1] Our Order noted that neither Justice Mike Wheat, who is running for re-election to the position sought by VanDyke, nor the Chief Justice had taken any part in consideration of the Petition for Supervisory Control. Both also recused themselves from participation in VanDyke's appeal in this case, as did Justice James Jeremiah Shea. (Orders, *Cross v. VanDyke*, S. Ct. No. 14-0259, May 7, 2014, and May 28, 2014.)

4

more than nine years by the time of the election, the District Court reasoned that he "will have only been admitted to the practice of law as an active member of the State Bar for a period slightly more than three years."

¶8 Van Dyke argues that there is no textual basis for a distinction between "licensed to practice" and "admitted to practice." He cites numerous cases from other jurisdictions recognizing the two characterizations as interchangeable. VanDyke contends that the District Court's reading of Article VII, Section 9, imposes an "actual practice" requirement that is at odds with the plain language of the Montana Constitution, which does not require the "active practice of law" for judicial candidates but does for the Attorney General. Mont. Const. art. VI, § 3(2). To the extent there is any ambiguity, VanDyke submits that the 1972 Constitutional Convention transcripts support his interpretation of the eligibility requirements. VanDyke warns of unintended consequences from an interpretation that would not only affect inactive Bar members but also would prohibit some judicial members of the Bar—also restricted from active practice—from running for the Supreme Court. He concludes that the strong presumption of eligibility, applied by many jurisdictions to afford voters maximum choice in selecting candidates for office, "makes this an easy case."

¶9 Cross agrees with VanDyke that Article VII, Section 9 is "plain and clear on its face," but contends that the plain language supports the opposite conclusion. Pursuant to the By-Laws of the State Bar of Montana, adopted by this Court in fulfillment of its authority under Article VII, Section 2(3), to make rules governing "admission to the bar," Cross points out that VanDyke "must have paid dues and assessments and met the other requirements for an active membership" in order to practice law in Montana. Because VanDyke was

5

prohibited from practicing law in Montana during the time that he chose to be on inactive status, Cross contends that VanDyke cannot count that time toward the five-year eligibility requirement. The unintended consequences of a ruling in VanDyke's favor, Cross posits, would open the door to judicial candidates who have no experience with Montana law and have never been permitted to practice law in this State. Cross thus counters that, if there is an easy answer to the question presented in this case, it is the one given by the District Court.

¶10 This Court applies the same rules in the construction of the Constitution that it applies in the construction of statutes. *Martien v. Porter*, 68 Mont. 450, 464, 219 P. 817, 819 (1923); *Keller v. Smith*, 170 Mont. 399, 404, 553 P.2d 1002, 1006 (1976). "[T]he intent of the framers of the Constitution is controlling and that intent must first be determined from the plain language of the words used." *State ex rel. Racicot v. District Court*, 243 Mont. 379, 384, 794 P.2d 1180, 1183 (1990). We have recognized that the qualifications of Supreme Court Justice "are dictated solely by the Constitution" and "covered exclusively in Article VII, Section 9." *Reichert v. State*, 2012 MT 111, ¶¶ 62, 74, 365 Mont. 92, 278 P.3d 455.

¶11 In construing the phrase, "admitted to the practice of law in Montana," "we must implement [the framers'] intent by viewing the plain meaning of the words used and applying their usual and ordinary meaning." *In re M.N.*, 2011 MT 245, ¶ 27, 362 Mont. 186, 261 P.3d 1047. The ordinary meaning of the word "admit," as used in this context, is "to allow to enter, let in, receive (a person or thing) . . . into any office, position or relation[.]" *The Compact Edition of the Oxford English Dictionary* (Oxford University Press, 1971). At the time the Montana Constitution was adopted, Montana did not have a unified bar

association. As noted, the Constitution gives the Montana Supreme Court authority over rules governing "admission to the bar and the conduct of its members." Mont. Const. art. VII, § 2(3). On January 29, 1974, pursuant to its Constitutional authority, this Court issued an order for Unification of the Bar of the State of Montana. *Application of Mont. Bar Ass'n President*, 163 Mont. 523, 518 P.2d 32 (1974). That Order was followed by the adoption in January 1975 of a Constitution and By-Laws of the State Bar of Montana. *In re the Unified Bar of Montana*, 165 Mont. 1, 530 P.2d 765 (1975).

¶12 Although this Court has approved various amendments to the Constitution and By-Laws during the last forty years, the substance of provisions pertinent to this case remains the same. Article II of the current Constitution of the State Bar of Montana, titled "Organization," provides:

> All persons admitted to the practice of law in the state of Montana are members of the State Bar of Montana. All such persons except judges of courts of record are dues paying members. Membership in the State Bar of Montana is a condition to practicing law in this state. Non-payment of membership dues and assessments shall result in suspension of membership and the right to practice law until payment of all dues, assessments and penalties in the manner provided by the by-laws.

¶13 The By-Laws of the State Bar of Montana (By-Laws) provide for eight classes of membership: active, judicial, inactive, active military service, senior, emeritus, resigned, and paralegal associate. By-Laws, art. I, § 3(a), in Montana Rules of Court vol. I, 473 (West 2014). With the exception of emeritus members—who provide only pro bono or volunteer services to low-income individuals—"only active and active military service members may practice law in the State of Montana." By-Laws, art. I, § 3(b). No inactive member, judicial member, senior member, or—except as to qualified pro bono services—emeritus member

7

"may practice law in this state or hold office or vote in any election conducted by the State Bar." By-Laws, art. I, § 3(f).[2]

¶14    An inactive, emeritus or senior member may be reinstated to active status by submitting a written, verified application to the Clerk of the Montana Supreme Court and satisfying all of the following requirements:

  (i)     payment of dues for active membership, for the year in which they are reactivated . . .;
  (ii)    completion of CLE, as may be ordered by the Supreme Court . . .;
  (iii)   payment of all license taxes, including those waived during emeritus or senior status, in compliance with Section 37-61-211, MCA.

By-Laws, art. I, § 3(e). A lawyer may terminate membership in the State Bar by voluntary resignation. "When a member who is licensed to practice law files with the State Bar office a written notice of such member's surrender of his or her license, such person shall thereupon cease to be a member of the State Bar[.]" By-Laws, art. I, § 4(f).

¶15    This Court also may take actions that affect a lawyer's ability to practice law in Montana. The Montana Rules for Lawyer Disciplinary Enforcement (MRLDE) allow the Court to suspend a lawyer from the practice of law, to place a lawyer on probation, to transfer a lawyer to disability/inactive status for a disabling mental or physical condition, and to disbar a lawyer from the practice of law in Montana. Rule 9, 28, MRLDE. Subject to review by this Court, a lawyer may be conditionally admitted to the practice, subject to

---

[2]  VanDyke points out that a District Judge who wishes to run for the Supreme Court already will have met the five-year admission requirement; however, a judicial member of the Bar who has served as judge of the Water Court or Workers Compensation Court could be ineligible to seek election to the Supreme Court under Cross's interpretation, despite serving in that capacity for "decades," if he or she had not attained five years of practice prior to being appointed to the judicial position. Cross does not directly dispute this interpretation, but observes that the five-year admission requirement need not "immediately" precede election or appointment to office.

8

requirements imposed by the Supreme Court's Commission on Character and Fitness. Rules of Procedure of the Commission on Character and Fitness of the State Bar of Montana, §§ 5(d), (6). And the Court may admit a lawyer *pro hac vice*, limiting the lawyer's appearance to a specific case or cases. Rules for Admission to the Bar of the State Montana, Rule IV.

¶16   VanDyke was admitted to the practice of law in Montana in 2005. "An attorney or counselor at law admitted by the supreme court of the state to practice within the state is required to pay a license tax of $25 a year." Section 37-61-211(1), MCA. Pursuant to this statute, inactive Bar members are required to pay the annual license tax. VanDyke has paid his tax and received his certificate from the Clerk of this Court for each year since his admission. His admission was not conditional and has not been terminated, suspended, or subjected to any form of probation or other disciplinary action at any time. VanDyke did, by voluntary action, choose not to engage in the practice of law in Montana, selecting inactive membership for a period of approximately six years. But he did not resign or surrender his license and his admission to the Bar was not withdrawn. In short, he has never been "un-admitted." His status as an inactive member of the Bar restricted him from "practic[ing] law in this state[.]" By-Laws, art. I, § 3(f).

¶17   To resolve whether that restriction renders VanDyke ineligible for the 2014 ballot, we are guided by the principle that, when interpreting the Constitution, "if possible, effect must be given to every section and clause." *Martien*, 68 Mont. at 464, 219 P. at 819. For example, in *Reichert*, where we determined that Article VII, Section 9(1), did not permit a legislative referendum to require that Supreme Court Justices be elected from legislatively-created judicial districts, we considered the language of that section together with other

relevant provisions of the Constitution. *Reichert*, ¶¶ 63, 65. We construe the Constitution "as a whole[,] with each provision bearing upon the same subject matter receiving appropriate attention." *Racicot*, 243 Mont. at 390, 794 P.2d at 1186.

¶18 The Constitution provides a key relevant distinction between the qualifications for judicial officers and the qualifications for Attorney General. While candidates for both offices must reside within the state for two years immediately preceding election and both must be admitted to the practice of law in Montana, a candidate for Attorney General must have "engaged in the active practice thereof for at least five years before election." Mont. Const. art. VI, § 3(2). Article VI, Section 3, and Article VII, Section 9 establish the minimum qualifications to hold statewide office in the executive and judicial branches of government; it is appropriate to view them together as part of the Constitution's framework for the structure of state government. "The process of reading relevant statutory schemes in their entireties is what allows the Court to give true effect to the will of the Legislature." *Friends of the Wild Swan v. Dep't of Nat. Res. & Conserv.*, 2005 MT 351, ¶ 16, 330 Mont. 186, 127 P.3d 394.

¶19 The "active practice" requirement is omitted from Article VII, Section 9(1). The plain language of these two provisions demonstrates a distinction in eligibility requirements. Given the Constitution's explicit requirement of the "active practice" of law in Article VI, Section 3(2), we are reluctant to conclude that the framers "somehow meant to imply" a similar requirement in Article VII, Section 9(1). *Friends of the Wild Swan*, ¶ 18; *see also Keene Corp. v. United States*, 508 U.S. 200, 208, 113 S. Ct. 2035, 2040 (1993) ("'Where Congress includes particular language in one section of a statute but omits it in another . . . ,

10

it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" (quoting *Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296, 300 (1983))). We strive to adopt a construction that will give effect to all relevant provisions without inserting what the express language of Article VII, Section 9(1) omits. Section 1-2-101, MCA.

¶20 Cross insists that she is not advocating for an "active practice" requirement, but for a construction that "admitted to the practice" means an unrestricted ability to engage in the practice of law. As discussed above, however, although VanDyke could not *engage* in the practice of law while on inactive status, his *admission* to the practice was not affected. The By-Laws expressly distinguish between voluntary inactive status and voluntary resignation of membership, which requires a lawyer to "surrender" his or her license to practice law. This interpretation finds additional support in this Court's rules governing the conduct of members of the Bar. Under the Rules for Disciplinary Enforcement, the disciplinary jurisdiction of the Supreme Court extends to:

> Any lawyer admitted to practice law in the state of Montana and any lawyer specially admitted by a court of the state of Montana for a particular proceeding, or appearing by pleading or otherwise in any judicial proceeding in the state of Montana, or otherwise engaging in the practice of law in the state of Montana[.]

Rule 7, MRLDE. Concluding that an inactive member is not "admitted to the practice of law" would place that member outside the reach of this Court's disciplinary jurisdiction.

¶21 The District Court, agreeing with Cross's interpretation of the eligibility requirement, concluded that being a member of the State Bar of Montana "is not synonymous with being admitted to the practice of law." Construction of the operative language in Article VII,

11

Section 9(1), is a matter of first impression. We concluded in *State ex rel. Racicot* that where both parties' constructions of the constitutional language at issue "appear to be plausible[,] . . . the sentence is ambiguous as to the present issue." *Racicot*, 243 Mont. at 385, 794 P.2d at 1183. "[T]o the extent the plain language of the statute leaves any doubt, we look to the legislative history to determine whether" the District Court's interpretation is correct. *State v. Gregori*, 2014 MT 169, ¶ 13, ___ Mont. ___, ___ P.3d ___. Therefore, as in *Racicot* and in *Reichert*, ¶¶ 64, 80-81, we examine the Constitutional Convention transcripts to shed additional light on the framers' intent.

¶22 At the 1972 Constitutional Convention, the Majority Report of the Executive Committee proposed that the Montana Constitution require candidates for all statewide executive offices to be "a citizen of the United States, a resident of Montana for two years next preceding the election, and . . . otherwise a qualified voter." Montana Constitutional Convention, Committee Proposal, February 17, 1972, Vol. I, 435. In addition, "any person to be eligible to the office of attorney general shall be an attorney in good standing admitted to practice law in the state of Montana, and have engaged in the active practice thereof for five years before election." Mont. Const. Conv., Vol. I at 435-36.

¶23 The Majority Proposal of the Judiciary Committee recommended similar qualifications for the office of District Court Judge, but slightly different qualifications for Supreme Court Justice. Mont. Const. Conv., Vol. I at 487-88. For District Judge, the Majority Report proposed in pertinent part:

> No person shall be eligible to the office of judge of the district court unless engaged in the active practice of law in the state of Montana for at least five years prior to filing for or being appointed to the office of district judge, and in

12

addition shall be a citizen of the United States and admitted to practice law in the supreme court of the state of Montana.

Mont. Const. Conv., Vol. I at 488. For Supreme Court Justice, the Majority Report proposed:

A United States citizen who has been a resident of Montana for two years shall be eligible for the office of justice of the supreme court if admitted to practice law in Montana and experienced with the law in Montana for at least five years immediately prior to filing for or being appointed to the position of justice.

Mont. Const. Conv., Vol. I at 487.

¶24 The Minority Proposal from the Judiciary Committee suggested a Judiciary Article that was considerably shorter than that proposed by the Majority Report. In offering its recommendation, the Minority commented that its proposal provided "strength" in "[i]ts elasticity and flexibility" and "force" in its "clarity." In the Minority Proposal, "citizens' choices and options have been enhanced, the judiciary has been strengthened, and the entire judicial system has been made more flexible to change and review by the people." Section 8 of the Minority Proposal provided identical qualifications for both Supreme Court Justices and District Judges; it used the language that candidates must "have been admitted to the practice of law in Montana for at least five years prior to the date of appointment or election." Mont. Const. Conv., Vol. I at 512. Comments to the Minority Report pointed out that it "specifies five years of practice at law as a qualification for either a supreme court justice or a judge of the district court." Mont. Const. Conv., Vol. I at 522.

¶25 On February 24, 1972, the delegates debated the Executive Article. When the topic turned to qualifications for Attorney General, Delegate Joyce explained that the five-year

13

practice requirement was adopted "to conform with the Judicial Article." Mont. Const. Conv., Vol. IV at 893. Delegate Joyce explained that the Executive Committee's intention was to "put the Attorney General on the same status as the district judge, that he'd have to practice law in Montana for 5 years, learn the procedure of Montana so, therefore—so that he could then be a good, qualified, experienced lawyer when he became Attorney General . . . ." Mont. Const. Conv., Vol. IV, at 895. The delegates adopted the Majority Report for the qualifications of executive officers. Mont. Const. Conv., Vol. IV at 899.

¶26 Two days later, the Convention took up consideration of the vastly differing proposals between the Majority and Minority Reports on the Judiciary Article. Mont. Const. Conv., Vol. IV at 1010. Following impassioned speeches from members of the divided Judiciary Committee, the delegates voted to proceed with the Minority Proposal. Mont. Const. Conv., Vol. IV at 1035. By February 29, 1972, they had reached discussion on the Qualifications section. Delegate Berg explained:

> We have changed the 1889 Constitution in some particulars with regards to the qualifications of judges. First of all, we eliminated the age requirement, but, secondly, we required five years practice of law for either a District Court judge or a Supreme Court judge, and by that we mean that he must be admitted to the practice of law in the State of Montana for at least five years before he's qualified to hold that office. It was the belief of the committee, and I'm sure I'm speaking now on behalf of both majority and minority, that it takes experience in the courtroom, it takes experience in the actual practice in Montana in order to understand the procedures that we use, and that it would be harmful to the carrying out of justice in our courts if we had people on the bench who were not intimately familiar not only with Montana substantive law, but more especially with procedural law, and we felt very strongly that one of the most significant qualifications would be actual trial practice in court. We did not feel, however, that we should specify that in particular, but we feel that these are the kind of qualifications that do lend to the making of good judges.

14

Mont. Const. Conv., Vol. IV at 1119-20. There was no further discussion on this provision of the Minority Proposal. The section was adopted on a voice vote. Mont. Const. Conv., Vol. IV at 1121.

¶27   Cross selected the above quote from Delegate Berg to argue to the District Court that the requirement for five years' admission to the practice of law in Montana "was premised upon the expectation that Montana Supreme Court Justices would be experienced in the actual practice of Montana law and procedures." Including the same quote in its Decision and Order, the District Court stated, "Explicit in [Delegate Berg's] reasoning is the principle that to be eligible for office, a judicial candidate must be engaged in the practice of law in the state for five years." In the context of the entire discussion, however, Delegate Berg's remarks reflect the Minority Proposal's streamlined approach to the Judicial Article and the distinction between being *eligible* to seek election to office and being *qualified* to serve in the office sought. The Minority Proposal removed all eligibility requirements except admission to the practice of law. After considering proposals that would have imposed specific eligibility requirements for both supreme court and district court candidates, the delegates chose an approach with more "elasticity and flexibility," abandoning requirements for "active practice" or "experience[] with the law in Montana."

¶28   Given the extensive discussion of the Executive Article and the specific "active practice" requirements for Attorney General, followed by the deliberate decision to adopt a simplified Judiciary Article, the convention transcripts make clear that the delegates understood and intended the difference between the qualifications for Attorney General and

15

the qualifications for Supreme Court Justice. The Constitutional Convention record thus supports our analysis of the plain language of Article VII, Section 9(1).

¶29     Although we have not previously interpreted Article VII, Section 9's requirement for admission to the practice of law, we applied liberal construction to a similar statutory eligibility requirement in *Shapiro v. Jefferson Co.*, 278 Mont. 109, 923 P.2d 543 (1996). In that case, the Jefferson County Commissioners had filled a vacancy in the position of county attorney with an attorney who had been admitted to the State Bar four years prior to her appointment but had practiced under this Court's "Student Practice Rule" for an additional year. The applicable statute, § 7-4-2701, MCA, imposed an eligibility requirement that a person be "admitted to the practice of law for at least 5 years prior to the date of election or appointment." This Court ruled that, because the attorney "was entitled to engage in the practice of law only by virtue of this Court's order enacting the Student Practice Rule and only after she met the requirements of and was certified to practice pursuant to that rule, the Court's order did admit her to the practice of law." *Shapiro*, 278 Mont. at 115, 923 P.2d at 547. The dissenting justices sharply disagreed, noting that "[t]he phrase 'admitted to the practice of law' . . . is a different matter entirely from 'practicing law'" and that the attorney had not been admitted to the practice of law under the Student Practice Rule when she had not completed all the eligibility requirements for admission to the Bar under statute and Court rules. *Shapiro*, 278 Mont. at 117-19, 923 P.2d at 548-49.

¶30     Although *Shapiro* has limited applicability here, it is instructive for the Court's broad interpretation of minimum eligibility requirements and for its recognition that admission to the practice of law is conferred in accordance with the rules of this Court and not by an

16

attorney's active Bar membership status. Even the dissenting justices' distinction between admission and practice supports a determination in this case that VanDyke meets the constitutional eligibility requirements. Under either approach, "admission to the practice of law in Montana" does not connote active membership in the State Bar.

¶31 Finally, as in *Racicot*, "[w]e have been presented with extensive arguments as to the potential for unreasonable results and even abuses of the Judicial selection system. We limit our decision to the facts and issues of the case before us." *Racicot*, 243 Mont. at 391, 794 P.2d at 1187. While unintended consequences possibly could occur under either construction of the provision, a construction that would disallow Bar members whose admission status has never been withdrawn, suspended or terminated and that could disqualify licensed attorneys who have served most of their careers in judicial positions would be an unreasonable construction of the eligibility requirement. To the extent the construction could open the door to long-inactive attorneys to run for judicial positions, the Constitution—as Delegate Berg recognized—determines minimum eligibility; the voters decide who is qualified to serve.

¶32 The Constitution's grant of authority to this Court to govern the practice of law and to develop rules for admission to the bar does not, as the Dissent suggests, authorize the Court to revise the minimum eligibility requirements that are set by the Constitution. Thus, a careful analysis of the intent of the framers in adopting these constitutional requirements is integral to proper resolution of this case. The Court has exercised its power to regulate through the imposition of various administrative prerequisites to actively engaging in the

17

practice of law; at least in this case, however, those administrative regulations did not affect VanDyke's admission to the practice.

## CONCLUSION

¶33 We conclude that VanDyke's admission to the practice of law in Montana in 2005 satisfies the Constitution's requirement that a candidate for Supreme Court Justice be "admitted to the practice of law in Montana for at least five years prior to the date of appointment or election," notwithstanding his choice to take inactive status for some of those years. The judgment of the District Court is reversed.

/S/ BETH BAKER

We Concur:

/S/ LAURIE McKINNON
/S/ JIM RICE
/S/ DANIEL A. BOUCHER
District Court Judge
sitting for Justice Michael E Wheat
Justice Patricia Cotter dissenting.

¶34 I dissent. I would affirm the decision of the District Court, though on slightly different grounds, and direct the Montana Secretary of State to strike VanDyke's name from the ballot.

¶35 In my judgment, the Court goes astray by relying upon Article VII, Section 9 of the Montana Constitution and its gleaning of the framers' intent, to the neglect of the clear import of Article VII, Section 2(3). Article VII, Section 2(3) of the Montana Constitution provides that the Supreme Court "may make rules governing appellate procedure, practice and procedure for all other courts, admission to the bar and the conduct of its members."

18

Thus, the framers placed in this Court's hands the full authority to define and circumscribe what constitutes the practice of law in Montana. We have stated that Article VII, Section 2 of the Montana Constitution "places the governance and control of the practice of law solely with the Supreme Court," *In re State Bar for Dues Increase*, 2001 MT 108, ¶ 19, 305 Mont. 279, 53 P.3d 854, and that it "specifically grants this Court the power to make rules governing admission to the bar and the conduct of its members." *In re Pres. of Mont. Bar Assn.*, 163 Mont. 523, 524, 518 P.2d 32 (1974) (citing Mont. Const. art. VII, § 2); *see also In re Matt*, 252 Mont. 345, 348, 829 P.2d 625, 627 (1992) (citation omitted) ("[T]he ultimate decision regarding the admission of attorneys in Montana rests exclusively with this Court."); *In re Verified Pet.*, 250 Mont. 325, 329, 820 P.2d 1288, 1290 (1991) ("In matters relating to the admission of attorneys to the Montana Bar, and the conduct of members of the bar, this Court's power is both broad and exclusive.").

¶36 In January 1974, this Court invoked its constitutional power "to govern and control the practice of law in Montana" when it issued its Unification Order and directed the Bar to present for this Court's adoption proposed rules for the Bar's government, admission of attorneys to the practice of law, and the conduct of its members. *Pres. of Mont. Bar Assn.*, 163 Mont. at 526-28, 518 P.2d at 33-34. The Court makes reference in its Opinion to our exercise of this constitutional power but fails to acknowledge its significance to the resolution of this case.

¶37 When the drafters adopted Article VII, Section 3(2) of the Montana Constitution and "place[d] the governance and control of the practice of law solely with the Supreme Court," *State Bar for Dues Increase*, ¶ 19, they gave us a clean slate upon which to write the rules

19

regulating the practice of law. In the years since our 1974 Order unifying the Bar, the By-Laws of the State Bar, initially adopted by us and subsequently amended pursuant to our constitutional power, have clearly delineated who can practice law in this state and who cannot. *State Bar for Dues Increase*, ¶ 18; *see also e.g. In re the Unified Bar of Mont.*, 165 Mont. 1, 5-8, 530 P.2d 765, 767-68 (1975) (approving initial Unified Bar By-Laws). Because the drafters of the Constitution tasked this Court with making the rules that would govern the practice of law, it is unnecessary to engage in a present-day debate about what the drafters may have intended in 1972 by the language "admitted to the practice of law." *See* Opinion, ¶¶ 21-28. What they clearly intended then and did in fact do was delegate to this Court the full authority to give meaning and parameters to that phrase. Thus, what matters here and now is how this Court has defined and constrained the admission to the practice of law in this state.[1]

¶38 We therefore look to the By-Laws of the State Bar of Montana to determine whether VanDyke was "admitted to the practice of law in Montana" while on inactive status. Though he was licensed and eligible to practice law in Montana, VanDyke was not admitted to practice law in Montana while inactive because he was barred during that timeframe from practicing law in any Montana courtroom. Article I, Section 3(b) of the By-Laws provides

---

[1] The inclusion of Section 3(2) in Article VII governing The Judiciary also readily explains why the contents of Article VI governing The Executive carry no persuasive value. The Court states that the two articles must be viewed together. Opinion, ¶ 18. However, their respective inclusions and omissions dictate otherwise. Article VII confers upon this Court "the ultimate decision regarding the admission of attorneys in Montana," permitting this Court to fashion practice qualifications for all attorneys. *Verified Pet.*, 250 Mont. at 328, 820 P.2d at 1290. Because there is no corresponding provision in Article VI conferring upon the executive branch the authority to determine the practice qualifications for any attorneys, including the Attorney General, elaboration concerning those qualifications in Article VI was necessary.

that, "[e]xcept as provided in subsection (g) of this section, only active and active military service members may practice law in the State of Montana." Inactive members are those "who are eligible for active membership but are not engaged in the practice of law in Montana." By-Laws, art. I, § 3(a)(iii). "[N]o . . . inactive member . . . may practice law in this state." By-Laws, art. I, § 3(f).

¶39 In order to practice law in a Montana courtroom, VanDyke was required to meet certain "practice requirements." Article I, Section 5(a) of the By-Laws states: "To practice law in the state courts of Montana, a member must: (i) have paid dues and assessments for active membership . . ., (ii) have completed all continuing legal education . . ., (iii) have paid all license taxes . . ., [and] (iv) be free of suspension or other discipline imposed by the Montana Supreme Court Commission on Practice." Because VanDyke opted not to meet these requirements, he could not practice law in Montana. Indeed, had he attempted to do so, VanDyke would have been subject to misdemeanor prosecution and a contempt of court citation. By-Laws, art. I, § 5(b).

¶40 The Court overcomplicates the analysis of the question presented. The State Bar By-Laws clearly and plainly prohibited VanDyke from practicing law in Montana while on inactive status. Moreover, for over five years VanDyke availed himself of the benefits of inactive status by paying reduced Bar dues, freeing himself from the payment of assessments to the Lawyers' Fund for Client Protection, and avoiding the CLE requirements imposed on active bar members. Having done so, he should be estopped from now asserting that he was admitted to practice law in Montana during those same five years. He cannot have it both ways, and the Court errs by concluding otherwise.

21

¶41 Because VanDyke was not "admitted to the practice of law in Montana for at least five years prior to the date of . . . election," as required by Article VII, Section 9(1) of the Montana Constitution and as circumscribed by the State Bar By-Laws approved by this Court, he is not qualified to have his name placed on the ballot as a candidate for the position of Supreme Court Justice. I dissent from the Court's contrary conclusion.

/S/ PATRICIA COTTER

District Court Judges Dirk M. Sandefur and Edward P. McLean join the dissent.

/S/ DIRK M. SANDEFUR
District Court Judge
sitting for Chief Justice Mike McGrath

/S/ EDWARD P. McLEAN
District Court Judge
sitting for Justice James Jeremiah Shea