Justice James Jeremiah Shea delivered the Opinion of the Court.
***339 ¶1 Appellant Connie Crites, in her capacity as the Personal Representative of the Estate of John Michael Crites (Estate), appeals the Order of the First Judicial District Court, Lewis and Clark County, denying the Estate's Complaint and Petition (Petition) for Release of Confidential Criminal Justice Information (CCJI). We address the following issue on appeal:
Whether the District Court erred when it denied the Estate's Petition for Release of Confidential Criminal Justice Information without conducting an in camera review.
¶2 We affirm.
PROCEDURAL AND FACTUAL BACKGROUND
¶3 In late May 2011, John Michael Crites was sued by his neighbors Dennis Shaw, John Mehan, and Katy Wessel. Shaw, Mehan, and Wessel sought compensatory and punitive damages after Crites allegedly threatened and accosted his neighbors in their neighborhood ***340 in Lewis and Clark County (County).
¶4 On June 28, 2011, Crites was reported missing. On October 8, 2011, Crites's dismembered remains were found in black plastic trash bags near MacDonald Pass. Crites's skull was later found on the west side of MacDonald Pass. To date, nobody has been charged with Crites's murder.
¶5 On March 27, 2012, the County issued a death certificate for Crites. On April 19, *1028 2012, Crites's sister, Connie Crites, was appointed personal representative of his Estate. On January 9, 2018, the Estate requested that the County release Crites's investigative file for the purposes of defending itself in the ongoing lawsuit and to pursue a civil wrongful death action. On January 19, 2018, the County responded to the Estate's request with a letter from County Attorney Leo Gallagher that it could not release Crites's investigative file because release "would jeopardize the State's ability to prosecute someone for the homicide and the investigation is ongoing."
¶6 On March 9, 2018, the Estate filed a Petition in District Court, seeking release of the investigative file. The Estate requested, pursuant to § 44-5-303, MCA, the Uniform Declaratory Judgment Act, and Article II, Section 9 of the Montana Constitution that the District Court conduct an in camera review of the CCJI associated with Crites's file and to release information under seal that is relevant to the Estate's claims and defenses in the ongoing lawsuit. The County opposed the Estate's request and argued that releasing CCJI to the Estate would compromise its investigation. In its response, the County submitted an affidavit from Detective Dan O'Malley that stated the Crites homicide investigation was active and ongoing. The affidavit further specified that the investigative file contained: ninety-five reports regarding Crites's homicide investigation, totaling over 1000 pages of documents; at least twenty search warrants; thousands of phone records; multiple reports from the Montana State Crime Lab; digital evidence, including audio recordings and photographs; and interviews of dozens of people.
¶7 On June 19, 2018, the District Court denied the Estate's Petition. The District Court determined that § 44-5-303, MCA, does not allow for the release of CCJI if the prosecutor determines dissemination would jeopardize an active investigation. Consequently, the District Court declined to conduct an in camera review of the CCJI contained in Crites's investigative file.
STANDARD OF REVIEW
¶8 We review a district court's conclusions of law to determine ***341 whether the district court's interpretation of the law is correct. Billings Gazette v. City of Billings , 2013 MT 334, ¶ 10, 372 Mont. 409, 313 P.3d 129 (citing Jefferson County v. Mont. Stand. , 2003 MT 304, ¶ 9, 318 Mont. 173, 79 P.3d 805 ). This Court "exercises plenary review over matters of constitutional interpretation." Nelson v. City of Billings , 2018 MT 36, ¶ 8, 390 Mont. 290, 412 P.3d 1058 (citing Cross v. VanDyke , 2014 MT 193, ¶ 5, 375 Mont. 535, 332 P.3d 215 ).
DISCUSSION
¶9 Whether the District Court erred when it denied the Estate's Petition for Release of Confidential Criminal Justice Information without conducting an in camera review.
¶10 The Montana Criminal Justice Information Act of 1979 (Act) sets forth the criteria that a district court employs when considering a motion for release of CCJI. See § 44-5-303, MCA. CCJI may be disseminated only: (1) to another criminal justice agency; (2) to "those authorized by law to receive it"; and (3) to those a district court authorizes to receive it "upon a written finding that the demands of individual privacy do not clearly exceed the merits of public disclosure." Section 44-5-303(1), MCA. CCJI includes criminal justice information, records made confidential by law, and any other criminal justice information not clearly defined as public criminal justice information. Section 44-5-103(3), MCA. The Act allows for any individual or an organization to file an action for dissemination of CCJI that the individual or organization considers "appropriate and permissible." Section 44-5-303(6), MCA.
¶11 Section 44-5-303(2), MCA, grants an exception to the general dissemination provision contained in § 44-5-303(1), MCA. Section 44-5-303(2), MCA, provides: "If the prosecutor determines that dissemination of [CCJI] would not jeopardize a pending investigation ... the information may be disseminated to a victim of the offense by the prosecutor or by the investigating law enforcement agency after consultation with the prosecutor."
¶12 When conducting an in camera review of CCJI, a district court is required to *1029 balance the conflict between the "right to know" and the "right to privacy" to determine whether dissemination of CCJI is warranted. Mont Const. art. II, §§ 9, 10 ; § 44-5-303(1), MCA; see also Mont. State Fund v . Simms , 2012 MT 22, ¶ 21, 364 Mont. 14, 270 P.3d 64 ; Lincoln Cty. Comm'n v. Nixon , 1998 MT 298, ¶¶ 26-28, 292 Mont. 43, 968 P.2d 1141 ; Bozeman Daily Chronicle v. City of Bozeman , 260 Mont. 218, 229, 859 P.2d 435, 442 (1993).
¶13 The party requesting CCJI must make an initial showing in its ***342 petition that it is authorized by law to receive the sought-after material. Bozeman Daily Chronicle , 260 Mont. at 224, 859 P.2d at 439 (citing In re Lacy , 239 Mont. 321, 325-26, 780 P.2d 186, 188-89 (1989) ). If the requesting party makes that initial showing, the burden then shifts to the State to demonstrate that the requested CCJI should not be released because the rights of individual privacy outweigh the merits of public disclosure. Bozeman Daily Chronicle , 260 Mont. at 227, 859 P.2d at 441 (citing In re Lacy , 239 Mont. at 325-26, 780 P.2d at 188-89 ). After conducting an in camera review of the CCJI sought, the district court may authorize release of appropriate portions of the requested CCJI. Section 44-5-303(1), MCA ; Bozeman Daily Chronicle , 260 Mont. at 229, 859 P.2d at 442.
¶14 The Estate filed a petition arguing it was entitled to the CCJI in Crites's investigative file under Article II, Section 9 of the Montana Constitution and as a person seeking dissemination pursuant to § 44-5-303(6), MCA. The County responded to the Estate's request with a letter indicating that the County believed release of CCJI related to the Crites investigation would jeopardize its investigation. The County submitted an affidavit in its response to the Estate's Petition that demonstrated Crites's investigative file was extensive.
¶15 Based on the County's assertion that release of the information would jeopardize an ongoing investigation, the District Court concluded that § 44-5-303, MCA, did not allow the Court to release the information. In its Order on Release of Confidential Criminal Justice Information, the District Court interpreted § 44-5-303(2), MCA, to provide that "[i]f either the Court's analysis favors privacy or if the prosecutor determines that the dissemination would jeopardize the investigation, the statute does not allow the information to be released." (Emphasis in original.) The District Court thus concluded that since the prosecutor had determined that release of the information would jeopardize the investigation, it "need not reach the analysis of balancing the merits of privacy and disclosure ...."
¶16 The District Court's conclusion that § 44-5-303(2), MCA, prohibited it from releasing CCJI over a prosecutor's determination that dissemination would jeopardize an ongoing investigation is incorrect. Section 44-5-303(2), MCA, allows a prosecutor to disseminate CCJI to the victim of an offense without obtaining the district court authorization that would otherwise be required by § 44-5-303(1), MCA, if the prosecutor determines that dissemination would not jeopardize a pending investigation or other criminal proceeding. Section 44-5-303(2), MCA, acts as an exception to the restrictions regarding the dissemination of CCJI set forth at § 44-5-303(1), MCA.
***343 Section 44-5-303(2), MCA, does not allow the prosecutor to supersede the district court's decision to allow for CCJI dissemination when the requesting party is a victim. Such an interpretation of the statute would lead to the incongruous result in which any person or organization could conceivably obtain CCJI via district court order pursuant to § 44-5-303(1), MCA, but § 44-5-303(2), MCA, could deprive a crime victim of the same right, if the prosecutor asserted that dissemination would jeopardize a pending investigation.
¶17 Although the District Court incorrectly concluded that § 44-5-303(2), MCA, prohibited it from releasing CCJI over the prosecutor's determination that dissemination would jeopardize an ongoing investigation, our analysis does not end there. We have not previously considered whether the presence of an active criminal investigation negates the requirement of an in camera review, or the need to conduct the balancing test between the "right to know" and the "right to privacy," called for in *1030 § 44-5-303, MCA. Article II, Section 9 of the Montana Constitution provides: "No person shall be deprived of the right to examine documents ... of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure." However, the "right to know" is not an absolute right, and it must be weighed against the demands of individual privacy. Lincoln Cty. Comm'n , ¶ 15 (quoting Mont. Const. art. II, § 10 ) (" '[t]he right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest. ...' "); Bozeman Daily Chronicle , 260 Mont. at 228, 859 P.2d at 441 ; Engrav v. Cragun , 236 Mont. 260, 262-63, 769 P.2d 1224, 1125-26 (1989). Moreover, as we recently observed in Nelson v. City of Billings , the right to know is "subject to interpretation and considered together with other constitutional rights and existing laws." Nelson , ¶ 19 (citing Montana Constitutional Convention, Verbatim Transcript, March 7, 1972, p. 1679).
¶18 The intent of the Framers controls this Court's interpretation of a constitutional provision, such as the "right to know." Nelson , ¶ 14 (citing Cross , ¶ 10 ; Butte-Silver Bow Local Gov't v. State , 235 Mont. 398, 403, 768 P.2d 327, 330 (1989) ; Keller v. Smith , 170 Mont. 399, 405, 553 P.2d 1002, 1006 (1976) ). We generally discern the Framers' intent from the plain meaning of the language used and may only resort to extrinsic aids if the express language is vague or ambiguous. Nelson , ¶ 14 (citing Cross , ¶¶ 10, 21-28 ; State ex rel. Racicot v. Dist. Ct. of the First Jud. Dist. , 243 Mont. 379, 386-88, 794 P.2d 1180, 1184-86 (1990) ;
***344 Butte-Silver Bow Local Gov't , 235 Mont. at 403-05, 768 P.2d at 330-31 ; Keller , 170 Mont. at 404-09, 553 P.2d at 1006-08 ). We have previously held that the language of Article II, Section 9 is "unique, clear, unambiguous, and speaks for itself ...." Nelson , ¶ 12 (citations omitted). However, even in the face of clear and unambiguous language, we have held that that we must additionally determine constitutional intent "in light of the historical and surrounding circumstances under which the Framers drafted the Constitution, the nature of the subject matter they faced, and the objective they sought to achieve." Nelson , ¶ 14 (citations omitted).
¶19 We have held that Article II, Section 9 creates " 'a constitutional presumption that every document within the possession of public officials is subject to inspection.' " Nelson , ¶ 17 (quoting Bryan v. Yellowstone Cty. Elem. Sch. Dist. No. 2 , 2002 MT 264, ¶ 39, 312 Mont. 257, 60 P.3d 381 ). But in crafting the "right to know," the Framers recognized that Article II, Section 9 may yield to countervailing societal interests-beyond the right to individual privacy-that were recognized at the time the Montana Constitution was adopted. See Nelson , ¶¶ 18-20 (citing Montana Constitutional Convention, Verbatim Transcript, March 7, 1972, p. 1679). Such interests include those " 'necessary for the integrity of government.' " Nelson , ¶ 20 (quoting Montana Constitutional Convention, Verbatim Transcript, March 7, 1972, p. 1678).
¶20 One specific interest the Framers considered as "necessary for the integrity of government" was that " 'all rights have to be balanced against a police power.' " Nelson , ¶¶ 19-20 (quoting Montana Constitutional Convention, Verbatim Transcript, March 7, 1972, pp. 1678-79); see also Nelson , ¶ 55 (McKinnon, J., concurring) ("special exceptions [to Article II, Section 9 ] are made to accommodate the exercise of constitutional police power and other competing constitutional interests....") (internal citations omitted). Pertinent to the issue before us, the Framers explicitly considered how the "right to know" would apply to the protection of CCJI. See Nelson , ¶ 19 (quoting Montana Constitutional Convention, Verbatim Transcript, March 7, 1972, p. 1679). The Framers' deliberations on CCJI and "the right to know" indicate that they did not intend for the drafting of Article II, Section 9 "to abolish, supersede, or alter preexisting legal privileges applicable to government proceedings and documents." Nelson , ¶¶ 20-22 (citing Montana Constitutional Convention, Verbatim Transcript, March 7, 16, 1972, pp. 1673-74, 1677-80, 2494-2500).
¶21 In that vein, we have previously observed in our application of § 44-5-303, MCA, that "[p]ublic exposure of law enforcement *1031 files relating to ongoing criminal investigations would ... have a disastrous ***345 effect upon law enforcement agencies in the performance of their duty ...." Engrav , 236 Mont. at 264, 769 P.2d at 1227 (emphasis added). We reaffirmed this concern in Bozeman Daily Chronicle v. City of Bozeman . Bozeman Daily Chronicle , 260 Mont. at 228, 859 P.2d at 441 (citing Engrav , 236 Mont. at 264, 769 P.2d at 1227 ) ("[w]hile not directly related to privacy concerns, we also pointed out in Engrav that public exposure of law enforcement files relating to ongoing criminal investigations would have a disastrous effect upon law enforcement agencies in the performance of their duty ....").
¶22 The Estate argues that whenever a request for CCJI is made, a district court must conduct an in camera review of the information sought, and balance the right to know against the right to individual privacy. Section 44-5-303(5), MCA, is the only subsection that expressly provides for a district court to conduct an in camera review after a request has been made for CCJI. The Estate acknowledges that § 44-5-303(5), MCA, is inapplicable here because it applies only to a request "relating to a criminal investigation that has been terminated by declination of prosecution or relating to a criminal prosecution that has been completed by entry of judgment, dismissal, or acquittal ...." Although the Estate has expressed understandable frustration that charges have not been filed against anyone for Crites's murder, it does not contend that the criminal investigation has been terminated. The Estate requests release of the CCJI pursuant to § 44-5-303(6), MCA, and contends that "when a private citizen or an entity files a petition under § 44-5-303(6), MCA, a district court is required to conduct an in camera review of the information ...." (Emphasis added.) We disagree.
¶23 An in camera review of CCJI sought pursuant to § 44-5-303(6), MCA, may often be appropriate; however, neither the plain language of § 44-5-303(6), MCA, nor our interpretation of it, has ever "required" an in camera review. While § 44-5-303(5), MCA, expressly provides for an in camera review for CCJI relating to a criminal investigation that has been terminated, § 44-5-303(6), MCA, provides an alternative to the procedures set forth in § 44-5-303(5), MCA. Nothing in the language of § 44-5-303(6), MCA, suggests that courts superimpose the procedures of § 44-5-303(5), MCA, upon a request made pursuant to § 44-5-303(6), MCA, and we decline to do so here.
¶24 By the same token, § 44-5-303(6), MCA, does not prohibit an in camera review and, indeed, such a review may well be indicated given the circumstances of a particular case. Thus, the issue here is whether the circumstances of this particular case warranted an in camera review before the District Court declined to order production of the requested CCJI.
***346 ¶25 Although the District Court in this case incorrectly relied upon § 44-5-303(2), MCA, for its conclusion that it was prohibited from releasing the CCJI over the prosecutor's determination that dissemination would jeopardize the ongoing investigation, it was entirely correct, and indeed necessary, for the District Court to consider the prosecutor's assertion to that effect, which was supported by an affidavit from the detective assigned to the case. Such consideration is consistent with both the Framers' intent that "all rights have to be balanced against a police power," Nelson , ¶ 19, and our concern that "public exposure of law enforcement files relating to ongoing criminal investigations would have a disastrous effect upon law enforcement agencies in the performance of their duty," Bozeman Daily Chronicle , 260 Mont. at 228, 859 P.2d at 441.
¶26 The circumstances of the present case do not demonstrate that the District Court erred in declining the Estate's request for an in camera review before denying its application for the CCJI. The record before us supports the County's determination in its letter to the Estate, and in Detective O'Malley's affidavit, that dissemination of the CCJI contained in Crites's investigative file would jeopardize its murder investigation. The County's affidavit specifically illustrates the vast nature of Crites's investigative file, the substantial amount of time needed to conduct a review of the file, and that the County is actively investigating Crites's murder.
*1032 Crites's murder occurred in 2011. Though eight years is a noteworthy length of time, there is no statute of limitations on homicide, and the Estate does not dispute that the investigation is ongoing.
¶27 "Because the judiciary has authority over the interpretation of the Constitution, it is the courts' duty to balance the competing rights at issue in order to determine what, if any information, should be given to a party requesting information from the government." In re Lacy , 239 Mont. at 326, 780 P.2d at 389. Irrespective of whether or not a prosecutor asserts that dissemination of CCJI would jeopardize a criminal investigation, a district court always retains the authority to conduct an in camera review, and to determine what, if any, information should be released to the requesting party. Notwithstanding its mistaken conclusion to the contrary, however, the District Court correctly agreed with the County's assertion that dissemination threatened the County's active investigation in its Order. We will not reverse where the district court reached the correct result, albeit for the wrong reason. State v. Ellison , 2012 MT 50, ¶ 8, 364 Mont. 276, 272 P.3d 646 (citation omitted). The Estate's interest in the CCJI contained in Crites's investigative file ***347 must yield to the State's police power to conduct investigations in this instance, which includes the County protecting CCJI of its active investigation into Crites's murder. See Nelson , ¶¶ 18-20 ; Bozeman Daily Chronicle , 260 Mont. at 228, 859 P.2d at 441 ; Engrav , 236 Mont. at 264, 769 P.2d at 1227. The District Court did not err in denying the Estate's Petition. See Billings Gazette , ¶ 10 ; Jefferson County , ¶ 9.
CONCLUSION
¶28 The District Court did not err in denying the release of CCJI from Crites's active investigation file to the Estate. We affirm.
We Concur:
MIKE McGRATH, C.J.
JIM RICE, J.
BETH BAKER, J.
LAURIE McKINNON, J.